## MARKET COMPANY *v.* HOFFMAN.

1. Pursuant to the authority conferred by its charter, granted by an act of Congress approved May 20, 1870 (16 Stat. 124), the Washington Market Company offered to the highest bidder at public auction the stalls in the market for a specific term, subject to the payment of a stipulated annual rent.   At the expiration of that term, A., one of such bidders, filed his bill to enjoin the company from selling the stall leased to him, claiming that he had the right to occupy it as long as he chose in carrying on his business as a butcher, provided that he thereafter paid the rent as it from time to time should become due.   *Held*, that A.'s right of occupancy ceased with the term, and that the company had the right to offer the stall for sale to the highest bidder.

2. Where a number of bidders filed such a bill, the value of the right to sell, which the company claimed and the court below denied, determines the jurisdiction here.   Where, therefore, a sale which would have produced more than $2,500 was enjoined by the Supreme Court of the District of Columbia, the company is entitled to an appeal, under the act of Feb. 25, 1879.   20 Stat. 320.

APPEAL from the Supreme Court of the District of Columbia.

The facts are stated in the opinion of the court.

*Mr. William Birney* for the appellant.
*Mr. Richard T. Merrick* for the appellee.

MR. JUSTICE STRONG delivered the opinion of the court.

This was a bill originally brought by James A. Hoffman against the Washington Market Company, praying for an injunction against the company's proceeding to sell a stall in their market, occupied by him, and for a decree establishing his right to retain possession of said stall so long as he chose to occupy it for his business as a butcher. Subsequently the bill was amended by consent, and two hundred and five occupants of other stalls in the market were made complainants with him. The relief then asked was an injunction in favor of each complainant, together with a decree establishing the right of each to the continued occupancy of his stall so long as he might choose to occupy it for his business. After hearing, the court by a final decree enjoined the company from selling, or offering for sale, the stands and stalls of the several complainants, or any of them, and also adjudged that the rights of the complainants in their several stalls and stands did not expire, by any valid limitations of the time for the continuance of such rights and interest, in two years from July 1, 1872. From this decree the company appealed.

The first question to be determined is whether the amount in controversy is sufficient to give us jurisdiction of the appeal. Upon this we have no doubt. While it may be true, that if Hoffman was the sole complainant, the amount in controversy would be insufficient to justify an appeal either by him or the company, the case is one of two hundred and six complainants suing jointly, the decree is a single one in favor of them all, and in denial of the right claimed by the company, which is of far greater value than the sum which, by the act of Congress, is the limit below which an appeal is not allowable. It is averred under oath in the pleadings that the sale which the company proposed to make, and the court below enjoined, would have realized to the company more than $60,000. Of

this benefit the decree deprives them.   It is very plain, there-
fore, that the appeal is one within our jurisdiction.

Dismissing this, we come directly to the merits of the case.
The company, chartered by an act of Congress approved May
20, 1870 (16 Stat. 124), was authorized to erect upon a lot
belonging to the United States a market-house with stalls.
By the second section of the act it was enacted as follows : —

" And the said company shall, whenever any part or parts of
said buildings, stalls, stands, and so forth, for market purposes, are
ready for use or occupancy, offer the same for sale at public auc-
tion, for one or more years, to the highest bidder or bidders, subject
to the payment of an annual rent, the amount of which to be fixed
by the mayor and common council of the city of Washington and
the directors of this incorporation " [a prescribed public notice being
given], " and all subsequent sales and leases thereof shall be made
on similar notice and in the same manner. .... The stalls, stands,
and privileges of all kinds, in said market, to be used for market
purposes, when offered at public sale, shall be let to the highest
bidder, and there shall be no bidding on the part of said company,
directly or indirectly; but said company, with the consent of the
mayor and aldermen of the city of Washington, may fix a minimum
rate of bids at such sale; and the person who shall offer the high-
est price, at or beyond such minimum, for any such stand, stall, or
privilege, shall be entitled to the occupation thereof, and shall be
considered as having the good-will and the right to retain the pos-
session thereof so long as he chooses to occupy the same for his own
business and pay the rent therefor. .... *Provided, however,* that
such right to the possession of such stands or stalls may be sold
and transferred by such purchaser under regulations to be fixed by
the by-laws of said company, and, in the case of the death of such
purchaser during the existence of his lease, it shall be disposed of
as other personal property."

By sect. 14, the corporation was required to pay to the city
of Washington the sum of $25,000 annually, in consideration
of the privileges granted; and by sect. 12 it was provided that
at the expiration of thirty years the city of Washington might
take possession of the property, on paying a sum equal to a fair
valuation of the buildings and improvements.   The property
was made to revert to the United States at the end of ninety-
nine years.

Such were the provisions of the act of Congress that have any bearing on the present case. In pursuance of the authority given by the second section, the company, on the 25th of May, 1872, offered to the highest bidder, at public auction, the stalls or stands in the market, for the term of two years from the first day of July, 1872; and Hoffman, with the other complainants, or persons under whose bids they claim, became the highest bidders for the several stalls they occupy. They now insist that they are entitled to hold the stalls thus bid off so long as they may choose to occupy them for their own business and pay the rent, notwithstanding the said term of two years has expired, claiming that such are the rights given by the act of Congress to the highest bidders at the auction.

We think this claim is quite unfounded. In our judgment, it has no warrant in any reasonable construction of the charter. The company was authorized and required to sell the privilege of occupying a stall at public auction *for a term*, or, to use the language of the act, " for one or more years; " and subsequent sales and leases were required to be made in the same manner. The company was left at liberty to fix the length of the term. They might sell for two years, or ten, or thirty, at their option, but in all cases sales were required to be made for a definite period. No authority was given to create a tenancy at will, — a tenancy at the will of either the company or the bidder at the sale. The prescription to sell " for one or more years " negatives this. Had it been intended that the sale should confer upon the highest bidder the right to occupy a stall at his will, and so long as he might use it for his business, those words would not have been inserted in the statute. They would be unmeaning; even more, they would have been contradictory of the intent. It would have been sufficient to declare that the stalls should be sold at public auction, and that the highest bidder should have the right to hold so long as he chose to occupy for his business and pay rent. We are not at liberty to construe any statute so as to deny effect to any part of its language. It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word. As early as in Bacon's Abridgment, sect. 2, it was said that " a statute ought, upon the whole, to be so construed that,

if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." This rule has been repeated innumerable times. Another rule equally recognized is that every part of a statute must be construed in connection with the whole, so as to make all the parts harmonize, if possible, and give meaning to each.

Keeping these admitted rules of construction in view, the clause in the charter which defines the rights of purchasers at the sale, the clause upon which the complainants rely, is easily understood. It declares in effect that the highest bidder for a stall shall be considered as having the good-will, and the right to retain possession thereof during his term, so long as he chooses to occupy the same for his own business and pay the rent therefor. The construction contended for by the complainants is obviously inconsistent with the direction that sales of rights of occupancy should be made for a term; that is, for one or more years. That construction, therefore, is not to be admitted, if another reasonable one can be given. That the clause (general as its language is) has some limitation will not be questioned. It will not be claimed that it gives to the highest bidder at a sale for two years, or to his vendee or transferee (for such bidder is authorized to assign), a perpetual right of occupany so long as he pays the rent. If it does, the right may outlast the time when by the charter the corporation of Washington is empowered to take possession of the market buildings and grounds, and even the time when the company's rights and property are to revert to the United States. To understand the true meaning of the clause, it is necessary to observe what the subject was in regard to which Congress attempted to legislate. In *Brewer's Lessee v. Blougher* (14 Pet. 78), it was said to be the undoubted duty of the court to ascertain the meaning of the legislature from words used in the statute, and the subject-matter to which it relates, and to restrain its operation within narrower limits than its words import, if the court is satisfied that the literal meaning of its language would extend to cases which the legislature never designed to include in it. Now, the subject upon which Congress attempted by this clause to legislate was the rights of the highest bidder for a stall, under a purchase for a term of years,

and not the rights of a purchaser under a bid for an indefinite period, terminable only at his will. Nothing else was in view of the legislature. No other sale had been spoken of. The enactment, therefore, that he should have the good-will and possession of the stall so long as he might choose to occupy it, paying rent, must have reference to possession during the term, for that was the only subject under consideration. Such a construction of the clause gives effect to it, denies effect to no other words or provisions in the statute, and is in strict harmony with every part. It is the only construction that harmonizes all the provisions of the act. And it is a construction which in a very important particular is beneficial to the highest bidders at the sale. The clause not only declares that the highest bidder above a fixed minimum shall by his bid become entitled to the possession, which had not been declared previously in the act, but it impliedly relieves him from what might, without it, have proved an onerous burden. The stalls in this case were sold for two years. The market company might have sold them for twenty, or even thirty. Such authority was given by the statute. Had they done so, the purchaser of a stall would have been bound to pay the stall-rent during the whole period, of twenty or thirty years, whether he occupied the stall or not, were it not for this provision, and in case of his death his estate would have been liable. To guard against this, his right under his bid to retain the occupany is declared to continue so long as he chooses to occupy for his own business, and pay the rent, clearly implying that when, during the period for which he bought, he chooses to give up the occupancy and cease to pay the rent, his liability ceases. In other words, the company is bound to permit his occupancy during the term which was sold, but the bidder is not bound absolutely to pay rent during the whole term, nor longer than he chooses to occupy the stall for his own business.

To our minds, therefore, it appears clearly that, under the true and reasonable construction of the act of Congress, the complainants below acquired by the bids made at the auction sale in 1872 no right to more than two years' occupancy of their several stalls, and no right to continue in possession

thereof after July 1, 1874. Our conclusion is supported by several other considerations. In the second section of the act it is enacted that in case of the death of any purchaser at the auction sale, "during the continuance of his lease," his right to the possession of his stall should be sold as other personal property. The words, "during the continuance of his lease," indicate strongly that Congress contemplated and intended that what was sold at the auction should be a term of years, with fixed limits of duration. Else why speak of the existence of a lease and its continuance?

We may add that the contemporaneous understanding of the parties was in harmony with the construction of the statute we now give. On the twenty-third day of May, 1872, the company resolved to commence the sale of rights to occupy the stalls on the twenty-fifth day of that month, in pursuance of previous notice given; and resolved also that the sales should be of the right to occupy for two years from July 1, 1872. On the same day, May 23, 1872, the company adopted market regulations, as they were authorized to do by their charter. Among these regulations were the following: Rent shall be payable quarterly in advance. No person shall be allowed to occupy a stall, or stand, until he has signed the market regulations, and has received a permit describing the character of his stall or stand, and the conditions of occupancy. At the end of the term of each occupant he shall quit and deliver up his stand peaceably, in as good order and condition, except ordinary wear, as the same now is, or may be put into by the company. With such regulations in force the sales were made, and a permit was delivered to each purchaser, declaring him entitled to occupy his stall "for the term of two years from July 1, 1872, paying therefor the quarterly rent in advance, subject to the conditions of the charter and by-laws of the company and the regulations of the company; the permit to be of no effect until the holder had signed the regulations." Thus the claimants, or those under whom they claimed, obtained possession, and thus they engaged to surrender possession at the expiration of their term of two years. It does not appear to have entered into the contemplation of the company, or the bidders at the sale, at that time, that by the purchase a bidder obtained a possible right

of occupancy for more than two years.   The construction now insisted upon by the complainants is an afterthought, a creature of recent birth.

In view of the considerations thus presented, we are of opinion that the Supreme Court of the District erred in construing the charter of the company, and sustaining the complainants' bill.   Of the cross-bill it is sufficient to say that it must fall with the bill of the complainants.   This is conceded by the appellants.

The decree of the Supreme Court of the District will be reversed with costs, and the record remitted, with instructions to dismiss both the bill and the cross-bill; and it is

*So ordered.*

MR. JUSTICE BRADLEY, with whom concurred MR. JUSTICE HARLAN, dissenting.

I dissent from the judgment of the court in this case.   I think that it was the intent of the statute to give to the purchasers of stalls the benefit of the " good-will " acquired during the term, so long as they chose to keep them and pay the rents originally fixed, or which might from time to time be imposed by the common council.