## No. 1144.

### I. N. GLOVER vs. J. H. M. TAYLOR.

1. A suspensive appeal bond reciting in *substance* that it is given as surety that appellant shall prosecute his appeal, and pay such judgment as may be rendered against him is good.

2. A devolutive appeal bond filed in the clerk's office before the expiration of the return day fixed in the order of appeal, is in time.

3. An agreement entered into between two rival candidates for a public office, whereby each one of them undertakes and binds himself to pay the other, in case of his own election, one-half of the net profits of the office, for the term, is in violation of good order and public policy, subversive of the best interests of society, has a tendency to destroy the safe-guards of the ballot-box and cannot be enforced by the courts.

APPEAL from the Third District Court, Parish of Claiborne. *Young*, J.

*Allen Barksdale, John A. Richardson* and *John R. Phipps* for Plaintiff and Appellee.

*Egan & Pierson* and *J. W. Holbert* for Defendant and Appellant:

The opinion of the Court was delivered by

WATKINS, J. Plaintiff moves to dismiss this appeal on the following grounds, viz:

1st. That the suspensive appeal bond is not conditioned that appellant *shall* prosecute his appeal; nor that he shall pay and satisfy "whatever judgment may be rendered against him if he be cast in his appeal; nor that he shall pay the cost of both the Supreme Court and inferior court if he be cast in his appeal."

2d. That there is no order of appeal to support the bond last filed on June 3, 1886.

The judge *a quo* in his order, granted in open court appeals *suspensive and devolutive* returnable to this Court according to law on the return day, and suspensive appeal bond was fixed according to law and the devolutive appeal bond at $175.

Appellant furnished a suspensive appeal bond in the sum of $1,300, but the technical sufficiency of same is complained of and may be open to objection—but with reference to which we find it unnecessary to express an opinion, inasmuch as the appellant filed a devolutive appeal bond before the return day had expired. This bond is not objected to as to form. The quotation from the order of appeal above given was ample authority for it.

The fact that the transcript had been previously prepared and certificate signed makes no difference.

It was submitted to and filed by the clerk in time, as same was done *prior to the return day fixed in the order* of appeal, granting both a *devolutive* and suspensive appeal. 35 Ann. 937, Thomas vs. Bienvenu.

Motion refused.

## ON THE MERITS.

Plaintiff and appellee has filed in this Court an answer to the appeal and prays that the judgment of the lower court should be increased to $1,458.33.

This suit arises under the following agreement, viz:

STATE OF LOUISIANA, PARISH OF CLAIBORNE, }
April 23, 1884. }

Articles of agreement made and entered into this day by and between I. N. Glover and J. H. M. Taylor, is as follows, to-wit: That in

case I. N. Glover is elected sheriff of the above parish and State, or J. H. M. Taylor, that we do both agree that the sheriff elect shall divide equally between each other the profits of the sheriff's office during the four years; and also agree to pay John M. Brown the sum of two hundred dollars per year for the above term mentioned, and the unsuccessful candidate shall be deputy sheriff.

(Signed)                             J. H. M. TAYLOR,
                                    I. N. GLOVER.

Plaintiff further alleges that J. H. M. Taylor was duly elected sheriff of the said parish at said election; that the said office pays $4,200 per year, and claims judgment against defendant for $2,450, one-half, for fourteen months.

Defendant answered, admitting his signature to the original agreement, but denying the existence of the contract as set up by plaintiff in his petition, and urged various special defenses against the legality of the agreement.

The case was tried by a jury, verdict and judgment for plaintiff, and defendant appeals.

Before issue was joined, either by default or answer, defendant filed the following peremptory exceptions to plaintiff's petition and cause of action:

IN DISTRICT COURT—JULY TERM, 1885.
No. 657.]

Now comes defendant in this suit for the sole purpose of excepting to plaintiff's petition and cause of action on the following grounds, to wit:

1st. Petition discloses no cause of action, in this: that the contract or agreement upon which plaintiff bases his cause of action, is prohibited by law, *contra bonos mores*, against good order and public policy, null and void, and cannot be enforced by law.

2d. Defendant specially pleads that if the court should hold that the first ground set up in this exception not good, and should hold that said contract can be enforced by law, then defendant pleads prematurity of plaintiff's action.

3d. If the court overrules the first grounds, then defendant pleads that plaintiff cannot sue for a specific amount, involving a settlement to ascertain said amount, before he alleges and proves a settlement, and that said amount is due after said final settlement.

Wherefore, defendant begs that this exception be sustained, and plaintiff's suit be dismissed with all costs.

                                J. W. HOLBERT,
                                        Attorney.

After this exception was filed, and before the trial of same, defendant filed his answer and then called up his exception for trial. The plaintiff, here, objected to the trial of the exception and urged that defendant had waived the same by subsequently filing his answer. The court heard the peremptory exceptions and overruled the same.

The first exception propounds the serious question in this case. Has plaintiff an actionable interest on such a contract?

This is not an action for services performed, in pursuance of his employment as deputy sheriff, and to which he had been appointed according to law, by reason of his peculiar fitness and competency for the discharge of the responsible duties thereof. C. P. 764.

The agreement was entered into *before* the result of the election was known, and at a time when neither was an occupant of the office, nor had any title to it.

In Davis vs. Holbrook, 1 Ann. 176, plaintiff brought suit on an agreement couched in these words, viz:

" If the vote of Louisiana is cast for Henry Clay, the endorsed certificate of deposit for $1,000 00, payable to our joint order endorsed thereon, is to be delivered to E. A. Davis, one of the undersigned. Should the vote of Louisiana be cast for James K. Polk, then the certificate is to be delivered to A. H. Hayes, whose name is also hereunto subscribed.

"(Signed:)                                    " E. A. DAVIS,
                                               " A. H. HAYES."

In that case the Court say :

" The safety and success of our institutions depend upon the purity of the elective franchise, and the substitution of a desire for gain, to the exercise of that free and unbiased judgment which an elector is bound to exercise in the choice of those to whom political power is to be entrusted, is so fraught with disastrous consequences that they cannot be considered without alarm. ·

" The addition of a spirit of rapacity to the already too ardent excitement growing out of the struggles for ascendency between parties tends to produce consequences which must result in putting an end to this great experiment of self-government which our republic offers to the world.   *    *    *    *

"Our elections, if such proceedings are tolerated, would cease to be the choice of the people, of those who are to administer their affairs, but become a disreputable game of desperate chance, and profligacy."

In 12 Ann. 154, Fox vs. City, the Court held that "no action can be maintained upon a contract made in violation of law."

Our Code declares that "an obligation without a cause, or with a false or unlawful cause, can have no effect." R. C. C. 1893.

From the letter of the instrument sued on the only consideration on which it rests is the illegal condition on which he was *to obtain* one-half of "the profits of the sheriff's office during four years"—an office to which he was not elected by the votes of the people.

*Offices* are to be granted absolutely *without any condition*. It is not in the power of the grantor to lessen the emoluments which the law has affixed to the discharge of official duties; *it matters not to what use the share of emoluments thus carved out is applied*. The public will be all ill-served if the circle within which an officer is to be selected, is *narrowed* by a reduction of the legal emoluments. If these are withdrawn from the incumbent, he may be placed under the temptation of compensating himself by speculation, extortion and fraud." 4 O. S. 49, Faurie vs. Morin, Syndic.

It is the duty of the sheriff, under the law, to make the best appointment in his power, according to his judgment, at the time of making the appointment; and it is against public policy and adverse to the efficient performance of the duties of his office, that he has entered into a binding agreement *beforehand* to appoint a *certain* person without any regard to his qualifications, and to deprive himself of the power of making the appointment of others if needed, and of removing the appointee if, in his judgment, his removal became necessary.

This contract is for four years—the entire term of defendant's office. Not only does it provide for the *equal* division of the profits of the sheriff's office *during the four years*, but it contains a further specific agreement "to pay John M. Brown the sum of *two hundred dollars per year* for the above time mentioned," etc.

Defendant, in an amended answer, tendered and refused, directly charges that the plaintiff procured, *unduly and illegally* and by means of a valuable consideration, the support of John M. Brown, and his relations and friends, and his and their votes, at the polls and at the election whereat the plaintiff was a candidate, and whereby the result of said election was unduly influenced against defendant, and that said consideration entered into and formed a part of the agreement sued on, and was evidenced in writing.

While this averment furnishes no proof, even the charge, under the circumstances stated, gives color to the complaint.

In 101 U. S. 112, McGuire vs. Corwin, the Court said:

"While recognizing the validity of an honest claim for services honestly rendered, but which are blinded and confused with those which

.are forbidden, the whole is a unit and indivisible. That which is bad destroys that which is good, and they perish together.

" When the taint exists, it affects fatally, in all its parts, the entire body of the contract. * * * When there is turpitude the law helps neither party."

Public offices cannot be the object of a contract of sale or a cession.

Our conclusion is that the agreement sought to be enforced is one entered into in open violation of good order and public policy, and the enforcement of which would lead to consequences subversive of the best interests of society, and have a direct tendency to destroy the safeguards of the ballot-box.

The defendant's first exception was well taken, and should have been maintained.

It is therefore ordered, adjudged and decreed that the verdict of the jury and the judgment appealed from be avoided, annulled and reversed, and that the defendant's first peremptory exception be sustained, and plaintiff's demands be rejected and that he be taxed with the costs of both courts.