**UNITED STATES of America,
Plaintiff,**

v.

**Rochelle CURTIS, Defendant.**

**No. 03–CR–6030L.**

United States District Court,
W.D. New York.

Feb. 18, 2003.

Stephan J. Baczynski, U.S. Attorney's Office, Buffalo, NY, for Plaintiff.

Robert G. Smith, Federal Public Defender, Rochester, NY, for Defendant.

*DECISION AND ORDER*

LARIMER, District Judge.

The Government appeals [1] from a Decision and Order of United States Magistrate Judge Jonathan W. Feldman entered November 8, 2002, dismissing a petition alleging that the defendant, Rochelle Curtis ("Curtis") violated probation by failing to provide a DNA sample as requested by the supervising probation officer.

The issue presented is whether Curtis, who was convicted by guilty plea of misdemeanor bank larceny under 18 U.S.C. § 2113(b), is required to provide a DNA sample under the provisions of the DNA Analysis Backlog Elimination Act of 2000, 42 U.S.C. § 14135a ("DNA Act").

The Decision and Order of Magistrate Judge Feldman is affirmed, substantially for the reasons given in his thorough Decision and Order filed November 8, 2002, which I incorporate by reference here as Appendix "A."

■ I agree with Magistrate Judge Feldman that misdemeanor bank larceny is not a "qualifying federal offense" listed under § 14135a(d)(1) of the Act. The subsection involved here is subsection E which describes a qualifying offense as:

> (E) An offense involving robbery or burglary (as described in chapter 103 of such title, sections 2111 through 2114, 2116, and 2118 through 2119).

I concur with the Magistrate Judge's determination that the DNA Act was intended to require DNA testing for the more serious and violent offenses. In fact, the section relating to DNA testing is contained as part of a chapter entitled "Violent Crime Control and Law Enforcement." A perusal of the qualifying offenses listed certainly supports that conclusion.

The Government contends that to the extent the statute is ambiguous, the Court should defer to the determination of the Attorney General as to what constitutes a qualifying federal offense. If the statute were ambiguous, I might agree, but I agree with Magistrate Judge Feldman that this statute is not ambiguous in defining qualifying federal offenses. I agree with the Magistrate Judge that the statute is quite clear in denominating offenses *involving* robbery or burglary. Clearly misdemeanor bank larceny does not "involve" robbery or burglary. Had Congress wished to cover all offenses listed in Chapter 103 of Title 18, it could have done so. Congress obviously evinced an intent to eliminate certain offenses from some of the statutory sections that do contain qualifying federal offenses. For example, under subsection F, the statute denominates the following as qualifying federal offenses:

> (F) Any violation of section 1153 involving murder, manslaughter, kidnapping, maiming, a felony offense relating to sexual abuse (as described in chapter 109A, incest, arson, burglary, or robbery).

Here again, Congress used the word "involving" concerning the listed offenses. Section 1153 prohibits other conduct in addition to the qualifying federal offenses listed in the DNA Act. For example, § 1153 precludes theft of personal property under § 661. I read subdivision F as a clear indication that Congress intended to require DNA testing only for the most serious types of crimes which are specifically listed as qualifying offenses.

■ I disagree with the Government's view that the Court should defer to the

---

1. After receiving submissions from the parties, the Court is confident that it has jurisdiction over this appeal pursuant to 18 U.S.C. § 3731. *See U.S. v. Marmolejo,* 915 F.2d 981 (5th Cir.1990); *U.S. v. Jankowski,* 771 F.2d 70 (3d Cir.1985).

Attorney General and his regulation, listed at 28 C.F.R. § 28.2, that includes bank larceny as a qualifying offense. Although in some circumstances the Court must give an agency head deference in interpreting statutes, that rule does not apply if the statute is unambiguous and if the administrative determination contradicts the clear intent of the statute. A court reviewing an agency's construction of a particular statute must first determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *see also Food and Drug Administration v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000).

In my view, that is the situation here. Congress obviously made a determination that only certain crimes would require testing under the DNA Act. The Attorney General is not authorized to circumvent the clear intent of Congress by adopting a regulation which adds offenses requiring testing where Congress has declined to do so. As the legislative history makes clear, H.R. Report No. 106–900(I), at *19 (2000), reprinted in 2000 U.S.C.C.A.N. 2323, Congress clearly intended that the Attorney General not have that unbridled discretion.

Here, the Magistrate Judge found that "[t]he plain language of section 14135a(d)(1)(E) does not impress this Court as ambiguous, indefinite or confusing." *U.S. v. Curtis*, No. 01–M–509, 2002 WL 31663507, at *2 (W.D.N.Y. Nov. 8, 2002). The Magistrate Judge employed the basic principles of statutory construction that the plain language should always control and that no statute should be con-

strued so as to render a word or clause inoperative. While not necessarily articulated in terms of the principles set forth in *Chevron* and *Food and Drug Administration*, it is clear that the Magistrate Judge read the words "involving robbery or burglary" in the context of the whole statutory scheme of the DNA Act and found that Congress had specifically addressed the issue of whether misdemeanor bank larceny was meant to be included as a qualifying federal offense. *See e.g., U.S. v. Curtis*, at *3 ("Given the type of violent crimes Congress listed as qualifying Federal offenses, construing the plain language of subsection (E) as not including bank larceny is both logical and appropriate. Put simply, there is nothing in the legislative history to suggest Congress intended to embrace a crime like misdemeanor bank larceny as a qualifying offense for DNA collection purposes.").

I agree with the Magistrate Judge's plain reading of the statute and find, as he did, that "the intent of Congress is clear." Therefore, the inquiry is at an end; "for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778.

## CONCLUSION

Magistrate Judge Jonathan W. Feldman's Decision and Order entered November 8, 2002 (Dkt. # 32) is affirmed and the petition alleging a violation of probation (Dkt. # 19) is dismissed.

IT IS SO ORDERED.

## APPENDIX A

### DECISION AND ORDER

#### *Preliminary Statement*

Currently pending before the Court is a motion by the defendant to dismiss a probation violation petition filed by the United States Probation Office. The government

has submitted papers in opposition. Oral argument was heard on June 3, 2002. For the reasons that follow, the defendant's motion to dismiss the pending petition is **granted.**

### Relevant Facts

On July 26, 2001, the defendant Rochelle Curtis appeared before this Court and entered a plea of guilty to a one count misdemeanor charging a bank larceny in violation of 18 U.S.C. § 2113(b). The factual basis for her plea was Ms. Curtis' admission that she forged the signature of her employer on several checks, cashed them and used the proceeds for her own benefit. Upon acceptance of her guilty plea, the Court ordered a pre-sentence investigation.

The defendant again appeared before the Court on October 5, 2001, for sentencing. The pre-sentence investigation described a pregnant thirty-year-old divorced mother of two who was struggling with substance abuse and clinical depression. According to the probation department report, Ms. Curtis used the stolen funds to support her drug habit and to pay for food and other items for her children. Although Ms. Curtis had several petty theft convictions in her past, she had no history of violence or other dangerous behavior. The Court sentenced the defendant to six months home confinement, five years probation, substance abuse and mental health counseling and full restitution. Neither the probation department nor the government advocated for DNA testing of the defendant.

The motion currently before the Court springs from a probation violation charge filed on April 23, 2002. The violation alleges that Ms. Curtis has violated the "standard conditions" of probation by refusing to "present herself for submission of a blood sample for DNA testing." (Docket # 19). More specifically, the government alleges that Ms. Curtis is required to provide a blood sample for DNA testing pursuant to the DNA Analysis Backlog Elimination Act of 2000, 42 U.S.C. § 14135a (hereinafter the "DNA Act"). It is undisputed that Ms. Curtis, acting on the advice of counsel, refused to provide a DNA sample to probation. The issue for this Court is whether the crime Curtis was convicted of, misdemeanor bank larceny, is a qualifying Federal offense which would require Ms. Curtis to provide a DNA sample pursuant to the DNA Act.

### Discussion

**1. The DNA Act:** The Act provides in relevant part, that the probation office shall collect the DNA samples from every person on probation who is, or has been, convicted of a "qualifying Federal offense." 42 U.S.C. § 14135b(a)(2). Subsection (d) of § 14135b defines a "qualifying Federal offense." Examples of qualifying Federal offenses include murder, manslaughter, sexual abuse, kidnaping, peonage and slavery. At issue here is construction of § 14135a(d)(1)(E) which provides that "qualifying Federal offenses" include:

An offense involving robbery or burglary (as described in chapter 103 of the such title, sections 2111 through 2114, 2116, and 2118 through 2119).

The government contends that because Curtis was convicted of a violation of Title 18 U.S.C. § 2113(b), her crime is within the range of statutory sections listed in the statute and therefore misdemeanor bank larceny is a qualifying Federal offense for purposes of DNA testing. Conversely, the defendant contends that the statute was designed to encompass only offenses involving *robbery* or *burglary* which are contained in the enumerated statutory sections. Both sides have represented to the Court that this case raises an issue of first

impression concerning the scope of § 14135a(d)(1)(E).[2]

**2. Statutory Construction of Section 14135a(d)(1)(E):** "[I]n any case concerning the interpretation of a statute, the 'starting point' must be the language of the statute itself." *Lewis v. United States*, 445 U.S. 55, 60, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980); In re *Caldor Corp.*, 303 F.3d 161, 167–168 (2d Cir.2002) (resolution of a dispute over statutory construction begins with language of statute). In examining the particular statute in question, a court should adhere to two cardinal rules. First, the plain language of the of the statute should always control. *American Airlines, Inc. v. Remis Industries, Inc.*, 494 F.2d 196, 198 (2d Cir.1974) ("It is a well-settled principle of statutory construction that the plain language of a statute offers the primary guidance to its meaning."). Second, "[i]t is a well known canon of statutory construction that, in general, a statute should not be construed so as to render a word or clause inoperative." *Bell v. Reno*, 218 F.3d 86, 91 (2d Cir.2000), *cert. denied*, 531 U.S. 1081, 121 S.Ct. 784, 148 L.Ed.2d 680 (2001). *See also Washington Market Co. v. Hoffman*, 101 U.S. 112, 115–16, 11 Otto 112, 25 L.Ed. 782 (1879) ("[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void or insignificant").

The plain language of section 14135a(d)(1)(E) does not impress this Court as ambiguous, indefinite or confusing. It reflects Congress' intent to make defendants convicted of *specified* offenses within *distinct* sections of the federal law subject to DNA testing. According to the plain language of the subsection (E), the distinct federal offenses for which DNA collection is required are those offenses involving robbery and burglary as described in sections 2111, 2112, 2113, 2114, 2116, 2218 and 2119 of Title 18. The clear import of the statute is that any offense in the seven enumerated statutory sections that *involves* "burglary or robbery" is a qualifying Federal offense for DNA testing purposes.

The government argues that the terms "robbery or burglary" as used in subsection (E) refers merely to the title of the criminal code in which the specified offenses are codified and "should not be understood as limiting DNA sample collection to cases involving actual robberies or burglaries." Government's Memorandum of Law (Docket # 22) at page 4. I find this argument unpersuasive. There are numerous federal crimes set forth in the sections of Title 18 specified in subsection (E). While most of them are robbery and burglary related offenses, some, including bank larceny, are not.[3] Subsection (E)

---

**2.** Currently pending before the Hon. William A Skretny are three cases in which the defendants have moved to dismiss a charged violation on the ground that the crime of bank larceny is not a qualifying Federal offense under the DNA Act. *See United States v. Peterson*, 99–CR–82(S), *United States v. Robinson*, 02–Misc.Cr.–31(S); *United States v. Greer*, 02–Misc.Cr.–32(S). In the *Peterson* case, the defendant was convicted of felony bank larceny, while in the *Robinson* and *Greer* cases the defendants were convicted of misdemeanor bank larceny.

**3.** The crime of bank larceny is a criminal offense legally and factually distinguishable from robbery. An essential element of robbery, which is absent from larceny, is proof of force or fear of the use of force. *See Carter v. United States*, 530 U.S. 255, 258, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000)(Bank larceny [18 U.S.C. § 2113(b)] is not a lesser included offense of robbery [18 U.S.C. § 2113(c)]). Other non-robbery related criminal offenses within the seven statutory sections enumerated in subsection (E) include 18 U.S.C. § 2113(c)(receipt, possession, concealment or

explicitly limits its scope to only those crimes *"involving"* robberies and burglaries *"as described in"* seven specifically enumerated statutory sections. 42 U.S.C. § 14135a(d)(1)(E)(emphasis added). To adopt the government's view would, in substance, render the words "involving" and "as described in" superfluous, a result contrary to the rules of statutory construction. *See TRW, Inc. v. Andrews,* 534 U.S. 19, 122 S.Ct. 441, 449, 151 L.Ed.2d 339 (2001) ("cardinal principle" of statutory construction is that statute should be construed so that "no clause, sentence, or word shall be superfluous, void or insignificant"); *Sprint Spectrum, L.P. v. Willoth,* 176 F.3d 630, 640 (2d Cir.1999) ("It is a well-settled rule of statutory construction that courts should disfavor interpretations of statutes that render language superfluous." (internal quotation and citation omitted)). *See also Pennsylvania Dept. of Corrections v. Yeskey,* 524 U.S. 206, 212, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) ("The title of a statute cannot limit the plain meaning of the text. For interpretive purposes, it is of use only when it sheds light on some ambiguous word or phrase." (internal quotations omitted)).

Congress certainly could have included larceny as a qualifying Federal offense by simply deleting the terms "robbery and burglary" from subsection (E), thus including all the various crimes "described in" the seven enumerated sections of Chapter 103. Or Congress could have easily added the crime of larceny to subsection (E) as it explicitly did with the crimes of burglary and robbery. In either of those scenarios, the "plain language" of the statute would support the government's position. But

subsection (E) is not written the way the government contends it should be "understood." "It is axiomatic that the plain meaning of a statute controls its interpretation, and that judicial review must end at the statute's unambiguous terms." *In re Venture Mortgage Fund L.P.,* 282 F.3d 185, 188 (2d Cir.2002).

The government also seeks to have this Court rely on portions of the legislative history of the DNA Act in order to construe subsection (E) to include bank larceny as a qualifying offense for DNA collection. But "[c]ourts in applying criminal laws generally must follow the plain and unambiguous meaning of the statutory language." *United States v. Albertini,* 472 U.S. 675, 680, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985). " 'Only the most extraordinary showing of contrary intentions' in the legislative history will justify a departure from that language." *Id. (quoting Garcia v. United States,* 469 U.S. 70, 75, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984)). There is no "extraordinary showing of contrary intentions" in the legislative history of the DNA Act. Indeed, the legislative history strongly suggests that Congress focused on serious violent crimes in determining "qualifying Federal offenses" for DNA collection purposes. According to the House Report, the term "qualifying Federal offense" includes "murder; manslaughter; other homicide offenses; offenses related to sexual abuse, sexual exploitation or other abuse of children, and transportation for illegal activity; kidnaping; burglary; and any attempt or conspiracy to include those crimes." H.R. Report No. 106–900(I), at *19 (2000) reprinted in 2000 U.S.C.C.A.N. 2323.[4] Given the type of violent crimes Congress listed as qualifying Federal of-

---

disposal of money taken from a bank) and 18 U.S.C. § 2114(b)(knowing receipt, possession or concealment of money or property belonging to the United States).

4. The crime of robbery was added to the final version of the bill, but this too is obviously a crime of violence.

fenses, construing the plain language of subsection (E) as *not* including bank larceny is both logical and appropriate. Put simply, there is nothing in the legislative history to suggest Congress intended to embrace a crime like misdemeanor bank larceny as a qualifying offense for DNA collection purposes.[5] If the government wants to include all crimes set forth in the seven enumerated sections of Title 18 as qualifying Federal offenses, their remedy lies not with asking the judicial branch to construe the statute contrary to its unambiguous terms, but rather asking the legislative branch of our government to amend the statute to conform to the government's "understanding" of what Congress intended.

### Conclusion

The petition for a summons filed by the Probation Office is **denied** and the violation is dismissed. Defendant Curtis shall not be required to provide a DNA sample as a condition of her probation because she was not convicted of a "qualifying Federal offense" under the DNA Act.

**SO ORDERED.**

November 8, 2002.

---

**5.** Interestingly, during the oral argument of the *Peterson* case now pending before Judge Skretny, the government intimated that the analysis for including misdemeanor bank larceny as a qualifying Federal offense may be "a whole other can of worms" as compared to the statutory analysis necessary to find felony bank larceny as a qualifying Federal offense. *See* transcript of Oral Argument held on July 31, 2002, *United States v. Peterson,* 99–CR–82(S)(Docket # 68).