147 T.C. No. 18

UNITED STATES TAX COURT

SILVER MEDICAL, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2267-14.                    Filed December 19, 2016.

P, a calendar year taxpayer, applied to have its investments in a therapeutic discovery project certified under I.R.C. sec. 48D. On its application P requested certification of investments made in its 2009 and 2010 tax years. While certification generally results in a tax credit, P elected to receive cash grants in lieu of a credit. P received certification. P then changed its 2010 tax year from a calendar year to a short tax year ending November 30, 2010. P filed a second application under I.R.C. sec. 48D requesting certification of investments made in its fiscal year ending (FYE) November 30, 2011. P's second application did not result in certification.

Held: P is not entitled to a grant related to investments made after the 2010 calendar year because P was not certified to make qualified investments after that year.

Held, further, grant funds attributable to estimated qualified investments that exceeded actual investments made during the 2010 calendar year must be recaptured as tax.

Held, further, P must recapture the excess grant funds for its FYE November 30, 2011, because that year includes the period in which the relevant grant was made.

James H. Silver (an officer), for petitioner.

Audra M. Dineen, for respondent.

VASQUEZ, Judge:  Respondent determined a deficiency in petitioner's Federal income tax of $41,032 for the fiscal year ending (FYE) November 30, 2011, and an accuracy-related penalty under section 6662(a) of $8,206.[1]  After a concession,[2] the issues for decision are:  (1) whether petitioner must recapture as tax $41,032 previously received as a grant and, if so, (2) whether recapture should occur for petitioner's FYE November 30, 2011.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated by this reference.  Petitioner is a

---

[1]  All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]  Respondent concedes that petitioner is not liable for the accuracy-related penalty.

corporation organized under Delaware law. At the time the petition was timely filed, petitioner's principal place of business was Palo Alto, California.

Petitioner is a medical device company focused on developing a system for more efficiently detecting cerebral ischemia (i.e., stroke) in patients undergoing surgery. During all relevant times James H. Silver served as petitioner's president. Mr. Silver holds a doctorate in chemical engineering and has over 17 years of experience in the medical device industry.

Shortly after petitioner timely filed its 2009 return, the Patient Protection and Affordable Care Act (ACA), Pub. L. No. 111-148, 124 Stat. 119 (2010), was enacted. ACA sec. 9023(a), 124 Stat. at 877, established a new section 48D in the Internal Revenue Code allowing a taxpayer to claim a tax credit (or alternatively apply for a cash grant in lieu of a credit) if the taxpayer made investments in a "qualifying therapeutic discovery project" (QTDP). The credit or grant was limited to 50% of qualified investments made in taxable years beginning in 2009 or 2010. Sec. 48D(a), (b)(5).

Pursuant to section 48D(d)(1)(A), the Secretary[3] and the Internal Revenue Service (IRS) jointly published Notice 2010-45, 2010-23 I.R.B. 734, establishing the QTDP program and describing the process by which taxpayers could apply to have a therapeutic discovery project certified as eligible for a credit or grant. The IRS also released Form 8942, Application for Certification of Qualified Investments Eligible for Credits and Grants Under the Qualifying Therapeutic Discovery Project Program, which allowed taxpayers to apply for the credit or grant.

On the Form 8942, a taxpayer had to describe its therapeutic discovery project and list its investment in the project for each year for which it was claiming the credit or requesting a grant. The IRS (in consultation with the Department of Health and Human Services) would review the application and decide whether to certify the project and the claimed investments. Notice 2010-45, sec. 5, 2010-23 I.R.B. at 735-737. If the QTDP was certified, the taxpayer would be allowed a credit or grant of 50% of its qualified investments. Sec. 48D(a) and (b). Because

---

[3] The term "Secretary" means "the Secretary of the Treasury or his delegate", sec. 7701(a)(11)(B), and the term "or his delegate" means "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context", sec. 7701(a)(12)(A)(i).

section 48D was added to the Code in 2010 and applied only to tax years beginning in 2009 and 2010, the taxpayer would have generally known the amounts of its investments made in 2009 but would have had to estimate the amounts of investments for 2010. If the taxpayer's estimate exceeded the actual investments made, the grant attributable to that excess amount had to be recaptured as tax. Notice 2010-45, sec. 8.03(5), 2010-23 I.R.B. at 739 (citing ACA sec. 9023(e)(5)(B)(i), 124 Stat. at 882).

Petitioner timely submitted a Form 8942 requesting certification of qualified investments for its two tax years beginning in 2009 and 2010. On its Form 8942, where taxpayers are required to indicate the ending dates for the tax years for which they are seeking certification, petitioner listed the dates for its calendar years ending December 31, 2009 and 2010. Petitioner also listed what investments were made in connection with the project during 2009 and estimated what investments would be made in connection with the project for 2010.

Respondent sent petitioner a Letter 4615 on October 29, 2010, approving petitioner's project, certifying $292,737 of qualified investments, and approving a grant of $146,368.50. Petitioner's certification letter states: "For calendar year 2009, a grant payment of $ 10,868.50 has been authorized to your Payment Management System account on October 29, 2010. The remaining allocated

amount of $ 135,500.00 will be authorized for payment no later than 30 days after the end of your 2010 calendar year ending December 31, 2010." The certification letter also notified petitioner that the amount of the grant might be reduced because the QTDP program was oversubscribed.

On the same day the certification letter was issued, $10,868.50 in grant money attributable to calendar year 2009 was deposited in petitioner's account.[4] Several months later, on January 28, 2011, the remaining $135,500 in grant money attributable to calendar year 2010 was deposited in the same account.[5]

Shortly after receiving the certification letter but before receiving the grant money for 2010, petitioner submitted a Form 1128, Application To Adopt, Change, or Retain a Tax Year, requesting a change for its 2010 tax year from a calendar year to a short tax year ending November 30, 2010.[6] Petitioner's request

---

[4] This represents 50% of the qualified investments petitioner made in the 2009 calendar year.

[5] This represents 50% of the qualified investments that petitioner estimated would be made in the 2010 calendar year.

[6] At trial Mr. Silver argued that petitioner had changed its taxable year for business reasons because no clinical trials occurred in December. However, no documentary evidence was admitted that supports Mr. Silver's testimony.

was approved several months later.[7] Because of the change in tax year, petitioner now had three tax years beginning in either 2009 or 2010.[8]

Presumably in an effort to conform its certification application with the recently approved change in tax years, petitioner submitted another Form 8942 dated December 14, 2011, requesting certification for its FYE November 30, 2011. The record shows that the IRS received the second Form 8942. However, the record does not show that the estimated investments were certified or that the Form 8942 was otherwise accepted or processed.

Petitioner filed returns claiming it had incurred qualified investments during the 2009 calendar year, the short tax year ending November 30, 2010, and its FYE ending November 30, 2011. Because petitioner claimed it had qualified investments exceeding actual investments made during these three periods, petitioner recaptured $73,960 of the grant.[9] However, the amount recaptured did

---

[7] All of the funds attributable to the 2010 calendar year had already been deposited in petitioner's bank account by the time petitioner's application to change its tax year was approved.

[8] Petitioner's tax years beginning in 2009 or 2010 included: (1) the full calendar year beginning January 1, 2009, and ending December 31, 2009; (2) the short tax year beginning January 1, 2010, and ending November 30, 2010; and (3) the fiscal year beginning December 1, 2010, and ending November 30, 2011.

[9] Petitioner reported the recapture on its return for its FYE November 30,

(continued...)

not include any grant funds related to investments made during petitioner's FYE November 30, 2011.

Respondent issued the notice of deficiency which disallowed the QTDP grant related to investments made after December 31, 2010 (i.e., respondent disallowed petitioner's claimed grant for the period between January 1 and November 30, 2011), and recaptured that amount of the grant as tax. This resulted in a deficiency of $41,032.

OPINION

I. Qualified Investments

As discussed earlier, section 48D allows taxpayers to claim a credit (or receive a grant in lieu of a credit) equal to 50% of qualified investments the taxpayer makes with respect to a QTDP of an eligible taxpayer. The parties agree that at all relevant times petitioner was an eligible taxpayer and that petitioner's project was a QTDP. Where the parties disagree is whether all of petitioner's claimed investments made after the 2010 calendar year were "qualified investments" within the meaning of section 48D(b). This is an issue of first impression.

[9](...continued)
2011.

We begin by recognizing that statutes should be interpreted as a whole to give effect to every clause, sentence, and word therein, see Market Co. v. Hoffman, 101 U.S. 112, 115 (1879), and the duty of a court is to render that type of interpretation whenever possible, United States v. Menasche, 348 U.S. 528, 538-539 (1955). Such an approach is a "cardinal principle of statutory construction". Williams v. Taylor, 529 U.S. 362, 404 (2000). Accordingly, we apply the plain meaning of the words set forth in section 48D and ACA sec. 9023, United States v. Am. Trucking Ass'ns, Inc., 310 U.S. 534, 543 (1940), and we do so mindful of the statutes as a whole.

The relevant paragraphs of section 48D(b) provide:

> (1) In general.--For purposes of subsection (a), the qualified investment for any taxable year is the aggregate amount of the costs paid or incurred in such taxable year for expenses necessary for and directly related to the conduct of a qualifying therapeutic discovery project.

> *       *       *       *       *       *       *

> (5) Application of subsection.--An investment shall be considered a qualified investment under this subsection only if such investment is made in a taxable year beginning in 2009 or 2010.

ACA sec. 9023(e)(4), 124 Stat. at 882, adds that "the term 'qualified investment' means a qualified investment that is certified under section 48D(d)".

The parties disagree over whether petitioner's investments made in 2011 were qualified investments. Petitioner's argument focuses heavily on paragraph (5), see supra p. 9, which provides that an investment is qualified so long as it is made "in a taxable year beginning in 2009 or 2010." Petitioner, taking a plain meaning approach, believes that by changing its tax years so that three tax years begin in 2009 and 2010, it should be allowed to make qualified investments over the three years. Respondent counters that when section 48D is read as a whole, it should be clear that Congress intended for taxpayers to be able to make qualified investments only over a maximum of two years (i.e., 24 months). Respondent further argues that petitioner can make qualified investments only in the two calendar years ending in 2009 and 2010 because those were the tax years for which petitioner's project had received certification.

We need not and will not address petitioner's argument in resolving the instant case. We focus on respondent's alternative argument and recognize that even if Congress did intend to allow taxpayers like petitioner to make qualified investments over three tax years (an issue we decline to decide), petitioner did not actually receive certification to do so.

Section 48D(d)(2)(A) gives the Secretary the authority to require taxpayers to provide specific information in an application for certification.[10] The Secretary exercised this authority when he and the IRS jointly issued Notice 2010-45. See Notice 2010-45, sec. 3, 2010-23 I.R.B. at 735. Notice 2010-45, sec. 6.02, 2010-23 I.R.B. at 737, states that applications for certification must be made on Form 8942. On that form, taxpayers are required to specify the taxable years beginning in 2009 and/or 2010 for which they are seeking project certification and are requesting the credit or grant. Only the 2009 and 2010 calendar years were specified on petitioner's Form 8942. Furthermore, the certification letter resulting from petitioner's application authorized grants only for the two calendar years. Consequently, those were the only periods for which petitioner was certified to incur qualified investments for QTDP grant purposes.

While petitioner later filed an amended Form 8942, likely in an effort to certify investments made in the fiscal year extending into 2011, petitioner was not issued a second certification letter. Therefore, petitioner cannot report that it made qualified investments after December 31, 2010, because certification to do so was

---

[10] Sec. 48D(d)(2)(A) provides: "Each applicant for certification under this paragraph shall submit an application containing such information as the Secretary may require during the period beginning on the date the Secretary establishes the program".

not received. <u>See</u> ACA sec. 9023(e)(4). Petitioner was entitled to make qualified investments only in the 2009 and 2010 calendar years. To the extent petitioner's qualified investments attributable to those two years exceed actual investments made, the grant funds petitioner received attributable to those excess qualified investments must be recaptured as tax. <u>See</u> Notice 2010-45, sec. 8.03(5) (citing ACA sec. 9023(e)(5)(B)(i)).

II.    <u>Recapture</u>

Next, we must determine the year for which petitioner must recapture the excess grant. Petitioner argues that recapture should occur for its short tax year ending November 30, 2010.[11] We disagree. For the reasons stated below, we find that petitioner must recapture the excess grant for its FYE November 30, 2011.

ACA sec. 9023(e)(5)(B)(i) provides:

Recapture of excessive grant amounts.--If the amount of a grant made under this subsection exceeds the amount allowable as a grant under this subsection, such excess shall be recaptured under subparagraph (A) as if the investment to which such excess portion of the grant relates had ceased to be a qualified investment <u>immediately after such grant was made</u>. [Emphasis added.]

We read this provision as requiring recapture of a disallowed portion of a grant immediately after the relevant grant was "made". Petitioner argues that a single

_____

[11] Assessment in that year would be barred by the period of limitations.

grant for all tax years was "made" on October 29, 2010, when petitioner received the certification letter and that recapture should have therefore occurred immediately after that date. We disagree. We believe that grants were "made" on separate dates: October 29, 2010, for the tax year beginning in 2009 and January 28, 2011, for the tax year beginning in 2010.

In determining that the grants were made on separate dates, we focus primarily on the fact that the grant funds attributable to each year were paid on separate dates. The terms of the QTDP program provide that grants for tax years beginning in 2009 will generally be paid no later than October 29, 2010, and that grants for tax years beginning in 2010 will generally be paid within 30 days of the last day of the 2010 taxable year. See Notice 2010-45, sec. 8.02(6) and (7), 2010-23 I.R.B. at 738. We believe that the payments for each tax year are sufficiently distinct to warrant a finding that the underlying grants are separately "made" in each year when paid.

In arriving at this conclusion, we observe that the certification letter approving the grant did not result in an unrestricted right to a fixed grant amount. In fact, the certification letter notified petitioner that the amount of the grant award was subject to change. It states: "Since this program was oversubscribed, your grant may be less than 50% of the amount of qualified investment shown on your

Form 8942." Under these circumstances, we believe that a single grant for all relevant years was not "made" with the issuance of the certification letter as petitioner argues. Rather, the grant for each year was made when paid because it was not until the grant was finally paid that the Secretary relinquished dominion and control of a fixed amount of grant funds to petitioner.

We find further support for our holding by looking at the authority guiding the grantmaking process. Notice 2010-45, sec. 8.02(1), allowed taxpayers to submit a single grant application that would cover tax years beginning in 2009 and 2010. See also id. sec. 5.02(3), 2010-23 I.R.B. at 736. The application was required to be submitted by July 21, 2010; consequently, applications were generally submitted before the end of most taxpayers' 2010 tax years. See id. sec. 5.02(2). After an application was submitted, the Secretary was required to approve or deny the application by October 31, 2010. See sec. 48D(d)(2)(B); Notice 2010-45 sec. 5.02(3).[12]

While most taxpayers' applications were generally submitted before the taxpayers' 2010 yearend, Notice 2010-45, supra, stated that the grant applications

_____

[12] The application process was understandably crafted to give the Secretary the ability to review most applications simultaneously because there was a $1 billion limit of funds for the entire program that needed to be efficiently allocated among all applicants. See sec. 48D(d)(1)(B); Notice 2010-45 sec. 5.02(1), 2010-23 I.R.B. 734, 736.

as they related to 2010 did not become effective until after the 2010 yearend. See
Notice 2010-45, sec. 8.02(2) (stating that an election to apply for a grant on Form
8942 submitted before the 2010 tax yearend was not considered effective until
"the day after the last day of the taxpayer's 2010 taxable year").[13] Thus,
petitioner's grant application for its 2010 calendar year, although approved on
October 29, 2010, did not become effective until January 1, 2011 (the day after the
last day of petitioner's 2010 taxable year). Under those circumstances, we
conclude that the grant application for that year was effective on January 1, 2011,
and that the grant for the 2010 calendar year was actually "made" when paid on
January 28, 2011.

Now that we have determined that the grant attributable to the 2010
calendar year was made in January 2011, we must return to the recapture provision
in ACA sec. 9023(e)(5)(B)(i) and determine what amount must be recaptured. A
taxpayer is allowed a grant in an amount equal to 50% of the qualified investments
made during each tax year. Sec. 48D(a). To the extent petitioner received grant
funds related to qualified investments petitioner did not make, petitioner must

---

[13] This conforms with the Patient Protection and Affordable Care Act, Pub.
L. No. 111-148, sec. 9023(e)(2)(B), 124 Stat. at 881, which provides that a
taxpayer applying for a grant for 2010 must do so after the last day for the 2010
tax year but not later than the due date for filing a return for that year.

recapture those grant funds as tax.  See ACA sec. 9023(e)(5)(A) and (B)(i), 124 Stat. at 882; Notice 2010-45, sec. 8.03(4) and (5), 2010-23 I.R.B. at 739.

Petitioner received certification to make $271,000 in qualified investments during the 2010 calendar year and received $135,500 in grant funds.  Because petitioner actually made only $41,016 in qualified investments during the 2010 calendar year, it was entitled to a grant of only $20,508.  The excess grant which must be recaptured is $114,992 ($135,500 grant received for 2010 less $20,508 allowable as a grant).  Petitioner has already recaptured $73,960 of the grant. Therefore, petitioner must recapture the remaining $41,032.

The proper year for recapture is FYE November 30, 2011, because it includes the date when the grant for the 2010 calendar year was made.  See ACA sec. 9023(e)(5)(B)(i) (requiring recapture of disallowed portion of grant immediately after relevant grant was made).

In reaching our holding, we have considered all arguments made, and to the extent not mentioned, we consider them irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.