**Robert S. GILL, Individually and as Executor of the Estate of Sarah Louise Gill, and Robert S. Gill, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 17029.**

United States Court of Appeals
Fifth Circuit.

July 18, 1958.

Winston B. McCall, Willliam S. Pritchard, Birmingham, Ala., Pritchard, McCall & Jones, Birmingham, Ala., of counsel, for appellants.

James P. Turner, Atty. Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F.

Prescott, Charles B. E. Freeman, Attys., Dept. of Justice, Washington, D. C., W. L. Longshore, U. S. Atty., Atley A. Kitchings, Jr., Asst. U. S. Atty., Birmingham, Ala., for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The sole question now for us in the Taxpayer's consolidated suits for refund of income taxes is whether the District Court was right in holding that Taxpayer was on a fiscal, rather than a calendar, year period of accounting.

The facts are stipulated and may be briefly capsulated. From 1941 on through all of the years here in dispute, Taxpayer, Robert S. Gill, filed his returns on a calendar year basis. From 1941 to 1945 he was a partner in the firm of Gill Printing and Stationery Company, a partnership which filed its returns and kept its books on the fiscal year period of accounting ending April 30 of each year.

In July 1945, Taxpayer acquired the entire ownership of Gill Printing and Stationery Company and thereafter operated the Company as a sole proprietorship. He continued to close its books as of April 30 and continued to report on his calendar year returns income from the Company for the fiscal year ending in each calendar year. He made no change in his existing period of accounting. Taxpayer never sought, nor did the Commissioner of Internal Revenue ever give, approval at any time to change Taxpayer's accounting period from the calendar year.

The crux of this case is found in this portion of the Trial Court's unreported memorandum decision:

"Plaintiff [Taxpayer] was required to report his net income upon the basis of his annual accounting period in accordance with the method of accounting regularly employed in keeping his books pursuant to the provisions of Section 41 of the Internal Revenue Code of 1939 [26 U.S.C.A. § 41] and Treasury Regulations 111, Section 29.41-4. As [Taxpayer] kept the books of his business, the Gill Printing and Stationery Company, on a fiscal year period ending April 30th of each year involved in this action, and as [Taxpayer] kept no other books, he was required to report his income for a fiscal year period ending April 30th of each year. James H. Silcox v. Commissioner, 12 B.T.A. [748] 749; Charles E. Hires Co. v. Commissioner, 26 B.T.A. 1351."

The Court also held that other memoranda and data [1] kept by Taxpayer fell "short of being classified as 'books' within the meaning of Section 41 of the In-

---

[1]. Putting to one side the legal conclusion drawn by the District Court, it is plain from the stipulation that this was no mere hodgepodge of miscellaneous papers scattered indiscriminately amongst Taxpayer's personal effects at home, in his office, or wherever they might be found or scraped together. They were neatly and systematically arranged with careful and methodical segregation. They were completely sufficient upon which to calculate his non-partnership income and deductions and no adjustments of any kind were made in such figures in any of the three examinations made by Revenue Agents concerning this period. These records were made up of:

"* * * a folder for each calendar year involved containing, (1) bank statements and cancelled checks for each of the twelve months of the calendar year which showed deposits made of such income and payments of such deductions; (2) memoranda information as to dividends received and date of payment of same; (3) original documents relating to all sales made of capital assets and gain realized; (4) statements showing all rent received, repairs made, and insurance paid on rental property; (5) data showing the cost basis depreciation allowed in prior calendar years and depreciation allowable in the current calendar year on rental property; and (6) data and receipts and all original records furnished to plaintiff covering all federal, state, county and local taxes paid, all interest paid and all charitable contributions made during each calendar year and all losses sustained during the calendar year."

ternal Revenue Code * * * Max H. Stryker v. Commissioner, 36 B.T.A. 326; Brooks v. Commissioner, 6 T.C. 504."

We think this case has a very narrow frame. That is because the question of the *period* of the accounting, unlike that of the *method* of accounting, admits of but two possibilities. The *period* of accounting under Section 41 of the Code [2] and the applicable regulations [3] may be either fiscal or calendar. It may not be both and it cannot be anything else. There are no hybrid *periods* of accounting.[4]

Once that *period* of accounting is fixed, its use is mandatory, so much so that it

matters not that this allows a fortuitous loss or gain to taxpayer or Government. Great West Printing Co. v. Commissioner, 8 Cir., 60 F.2d 749; Jonas Cadillac Co. v. Commissioner, 7 Cir., 41 F.2d 141, affirming 16 B.T.A. 932; Helvering v. Brooklyn City R. Co., 2 Cir., 72 F.2d 274. The impact of this is graphically portrayed in American Hide & Leather Co. v. United States, 284 U.S. 343, 52 S.Ct. 154, 76 L.Ed. 331. The only escape from this inexorable fate is a change in accounting period with the approval of the Commissioner as the Code [5] and the Regulations [6] spell out so clearly.

2. "The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping with the books of such taxpayer; * * * If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year." 26 U.S.C.A. § 41.

3. Treasury Regulations 111, Section 29.-41–4. *"Accounting Period.* The return of a taxpayer is made and his income computed for his taxable year, which in general means his fiscal year, or the calendar year if he has not established a fiscal year. (See section 48.) The term 'fiscal year' means an accounting period of 12 months ending on the last day of any month other than December. No fiscal year will, however, be recognized unless before its close it was definitely established as an accounting period by the taxpayer and the books of such taxpayer were kept in accordance therewith. A person having no such fiscal year must make his return on the basis of the calendar year. Except in the case of a first return for income tax a taxpayer shall make his return on the basis upon which he made his return for the taxable year immediately preceding, unless, with the approval of the Commissioner he has changed his accounting period. (See section 29.46–1.)"

4. Of course, the 1954 Code permits certain taxpayers to use a 52/53 week fiscal year. 26 U.S.C.A. (1954) § 441(f) and (e), Merten's Law of Federal Income Taxation, Vol. 2 (1957 edition) Section 13.07 and see, also, Sections 13.02, 13.03.

5. Section 46. *"Change of accounting period.* If a taxpayer changes his accounting period from fiscal year to calendar year, from calendar year to fiscal year, or from one fiscal year to another, the net income shall, with the approval of the Commissioner, be computed on the basis of such new accounting period, subject to the provisions of section 47." 26 U.S.C.A. § 46.

The pattern of the Code shows that in addition to consent, there must be a special separate return: "If a taxpayer, with the approval of the Commissioner, changes the basis of computing net income from fiscal year to calendar year a separate return shall be made * * *. If the change is from calendar year to fiscal year, a separate return shall be made * * *." 26 U.S.C.A. § 47(a).

6. Regulations 111, Section 29.46–1: *"Change of Accounting Period.* If a taxpayer (other than a subsidiary corporation required to change its accounting period by reason of the provisions of § 23.14 of this chapter or 26 CFR, 1943 Cum.Supp. 33.14) changes his accounting period he shall, prior to the expiration of 30 days from the close of the fractional part of the year for which a return would be required to effect the change, furnish to the collector, for transmission to the Commissioner, the information required on Form 1128. * * * If the change is approved by the Commissioner, the taxpayer shall thereafter make his returns and compute his net income upon the basis of the new accounting period."

By amendments in 1953, Regulations 118, Sec. 39.46–1, provided a blanket authorization for a change in accounting period in certain prescribed situations without express application and approval. 2 Merten's op. cit. supra, Sec. 13.17.

As such this inevitably involves history. Scripture and a tax accounting period must each have its Genesis. Here, rather than in the law as such, did the Court err. For "In the beginning" was not, as Commissioner urged and the Court found, the year 1945 when Taxpayer became the sole proprietor of this printing business. This was an event of importance which in his economic life and in relation to internal matters of Alabama law as dealt with the life and death of partnerships, probably had much significance. But Section 41 could no more take notice of this than it would permit Theriot, pledging his troth in the memorable words "All my worldly goods I thee endow," to invest his bride with his fiscal year. Theriot v. Commissioner, 5 Cir., 197 F.2d 13, certiorari denied 344 U.S. 874, 73 S.Ct. 167, 97 L.Ed. 677.

"In the beginning" as it is here engraved upon the stipulated tablets of stone was 1941. Accepting the Commissioner's contention that his "other memoranda records," note 1, *supra*, were not books, this made him a calendar year taxpayer. The fact that he was a partner in a partnership reporting on a fiscal year did not make this either his fiscal year or give the partnership fiscal year books the status of his own accounts.[7] And, as the Commissioner so strenuously agrees, he did "not keep books." That brought into play the automatic provision of Section 41 and all of its predecessors that in such event " * * * net income shall be computed on the basis of the calendar year."

 And this he did, regularly and methodically as each year rolled around. That these calendar year returns filed regularly from 1941 up to 1945 reported (as to the printing business) only his distributive share of the partnership earnings on the basis of its fiscal year did not make these any less a calendar year return or give any warrant to Commissioner or Court to describe them as "purported" or "alleged" calendar year returns. "When an individual partner has an accounting period different from the accounting period of the partnership, the individual partner includes in his return for his taxable year his distributive share of the partnership income for the partnership year ending within his taxable year. Thus, for example, a partner on a calendar year basis is taxable on his distributive share of the partnership income for its fiscal year ending within his calendar year. Similarly, where the partnership is on a calendar year basis and the individual reports on a fiscal year basis, the partner's distributive share of the partnership income for its calendar year is taxable to him for the fiscal year during which the partnership's calendar year ended." 2 Merten's Law of Federal Income Taxation, Section 13.24, 1957 ed.

Nor can it be said that in 1945 "The sum stood still." Indeed, Taxpayer's transmutation from *a* partner to *sole* proprietor may have had all sorts of Alabama consequences, but as a calendar year taxpayer, it did not work any change in Taxpayer's accounting period. Until

---

**7.** See 2 Merten's op. cit., supra, Section 1301 and particularly footnote 3:

"The net income of a taxpayer who keeps no books must be computed on the basis of a calendar year even though the taxpayer is a member of a partnership which keeps its books and files its returns on a fiscal year basis. The books kept by the partnership are not the books of the individual partners. Max Freudmann, 10 T.C. 775; Klempner v. Glenn, D.C.W.D.Ky.1949, 82 F.Supp. 626. See, also, Irene Nunnery Theriot, 15 T.C. 912, affirmed Theriot v. Commissioner, 5 Cir., 1952, 197 F.2d 13, certiorari denied

1952, 344 U.S. 874, 73 S.Ct. 167, 97 L.Ed. 677, involving the unsuccessful claim of a wife domiciled in a community property state that the books kept for a business operated as an individual proprietorship by her husband were her individual books.

"See Max H. Stryker, 36 BTA 326, holding that where the taxpayer, a member of a partnership, kept no books apart from the partnership books he was not entitled to change his accounting period from the calendar to a fiscal year basis coinciding with that of the partnership."

he sought and obtained consent from the Commissioner to change from a calendar year to the fiscal year of the business whose total ownership he had just acquired, his duty was clear. Regulation 29.41–4, note 3, *supra*, commanded him to " * * * make his return on the basis upon which he made his return for the taxable year immediately preceding, unless, with the approval of the Commissioner, he has changed his accounting period."

To be sure that imposed on him the duty to change the partnership period to that of his own. "For Federal income tax purposes, a business which is conducted as a sole proprietorship must use the same accounting period as the proprietor since the income and deductions for the business must be included in his individual return. * * * If he desires to change his accounting period he must first obtain the prior approval of the Commissioner." O.D. 941 CB 4, 71 (1921) and see Rev.Rul. 57–389, IRB 1957–35, 15. But since the one who is assessed and pays the taxes is the owner, not the business, the failure of Taxpayer to synchronize the accounting period of himself and his printing enterprise does not undermine his calendar year status. By force of the statute, that continued mandatorily until permission to change was granted. This was never sought nor was it ever given either expressly or impliedly. Whether this produced a loss or gain to Taxpayer or Government, whether, if so, it is now irretrievable by intervening limitations, or is beyond recapture through terms and conditions coercively and vicariously[8] imposed as though consent had been sought and given, is a matter of complete indifference as the lines which Congress laid down, fiscal on the one side, calendar on the other, unavoidably call for arbitrary and sharp distinctions.

For us, in these circumstances, the way is plain: "Consistency in the absence of approval is imperative." Theriot v. Commissioner, 5 Cir., 197 F.2d 13, 16.

The case is therefore remanded for other and further proceedings.[9]

Reversed and remanded.

---

8. The Commissioner may not impose adjustments which change the tax status of income as previously existing to a different year. Commissioner of Internal Rvenue v. Mnookin's Estate, 8 Cir., 184 F.2d 89; Welp v. Commissioner, 8 Cir., 201 F.2d 128; Goodrich v. Commissioner, 8 Cir., 243 F.2d 686; Commissioner of Internal Revenue v. Dwyer, 2 Cir., 203 F.2d 522; Commissioner of Internal Revenue v. Frame, 3 Cir., 195 F.2d 166; and see, Patchen v. Commissioner, 5 Cir., 258 F.2d 544.

9. The parties stipulated that in the event the Court were to hold that Taxpayer's accounting period was a calendar year, the amount of refund is to be computed by the parties subject to determination by the Court in the event of disagreement. This will comprehend, to the extent applicable and heretofore raised, the collateral matters of limitations, determination or over-assessments and the like.