MOHAMMAD M. AND MONIREH AAZAMI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Aazami v. Commissioner
Docket No. 2102-92
United States Tax Court
T.C. Memo 1993-436; 1993 Tax Ct. Memo LEXIS 447; 66 T.C.M. (CCH) 793; September 20, 1993, Filed *447 Decision will be entered for respondent. Mohammad M. and Monireh Aazami, pro se. For respondent: Glorianne Gooding-Jones. NAMEROFF
NAMEROFF
MEMORANDUM OPINION NAMEROFF, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1] Respondent determined a deficiency in petitioners' Federal income tax for 1987 in the amount of $ 5,575. Respondent also determined additions to tax under section 6653(a)(1)(A) in the amount of $ 278.75, section 6653(a)(1)(B) in the amount of 50 percent of the interest due on $ 5,575, and section 6661(a) in the amount of $ 1,393.75. The issues for decision are: (1) Whether petitioners are entitled to Schedule C deductions as claimed on their 1987 return; (2) whether petitioners are entitled to a deduction of a loss as a result of confiscation of assets by the *448 Iranian government; and (3) whether petitioners are liable for the additions to tax. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time of the filing of the petition herein, petitioners resided in North Hills, California. Petitioners bear the burden of proving that respondent's deficiency determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). In 1975, petitioners and a cousin Forough Aazami established the Artat Engineering Company, Ltd. (Artat). Artat was involved in the construction of buildings, roads and defense-related structures in and around Tehran, Iran. One document in the record reflects that petitioners made an initial capital contribution of 72,000,000 rials [2] for 90 percent of Artat's original capital. (However, the record also reflects that substantial cash assets such as savings accounts and certificates of deposits in Iranian banking institutions were considered by petitioners to be corporate assets, but which were titled in the names of petitioners, their children, and other relatives.) Forough *449 Aazami contributed the remaining 10 percent of capital, and owned 10 percent of the stock. Mohammad Aazami served as president of Artat. Until 1979, Artat was engaged in construction at several sites, employed 500 people, and allegedly owned construction equipment worth approximately 3,400,000 rials. In 1979, Muslim fundamentalists, led by Ayatollah Khomeini revolted against the Shah and took control of the Iranian government. The Shah fled Iran on January 16, 1979, and Khomeini returned to Iran from exile in France on January 31, 1979. Members of the Baha'i religion, a minority religious sect in Iran, were persecuted by Khomeini and his followers. Many of them were executed, and their property confiscated or destroyed. Petitioners are members of the Baha'i religion. Initially, petitioners remained in Iran. However, as the situation *450 deteriorated, and their lives became increasingly threatened, petitioners fled Iran with their children in early July 1979. On July 30, 1979, petitioners and their three children entered the United States on a 3-month tourist visa and were granted temporary asylum by the United States government on January 17, 1983. On May 30, 1983, petitioners were issued resident alien identification cards. Since July 1979, petitioners have continuously resided in southern California. From the time petitioners left Iran, Artat purchased no additional equipment, construction at all the sites ceased, and Artat's work force was reduced to only 15 employees, consisting mostly of security personnel which, according to petitioner husband, was for the purpose to show a readiness to resume operations. However, between 1979 and 1981, most of Artat's construction equipment was either confiscated by the Iranian government or stolen by unknown persons. On July 6, 1979, while petitioners were still in Iran, an unidentified armed group entered a closed Artat construction site and removed all the construction equipment which was there. On November 5, 1980, the Revolutionary Guard entered Artat headquarters *451 and seized 14.4 million rials from the safe, as well as some unidentified personal property belonging to petitioners. On December 13, 1980, the Islamic Revolutionary Court seized Iranian banks in which 57,600,000 rials were deposited in savings and certificate of deposit accounts in the names of petitioners, their children, and Forough Aazami, and which accounts petitioners claim to be property of Artat. In 1986, additional assets of Artat were confiscated. Also, some of petitioners' other business and nonbusiness properties were from time to time confiscated by the Iranian government or destroyed by mobs. Petitioners began filing United States income tax returns in 1980, and have filed a return every year since. Between 1980 and 1987, petitioners neither claimed any foreign expropriation losses nor reported income from any Iranian business on their respective tax returns. Schedule C. deduction
On their 1987 return, petitioners claimed Schedule C deductions which included $ 12,160 for automobile-related expenses, $ 3,600 for commissions, $ 6,325 for rent on business property, $ 2,950 for travel expenses, $ 4,160 for meal and entertainment expenses, and $ 1,920 for gifts. *452 Petitioners substantiated $ 8,106 of their claimed automobile expenses, but respondent, determining that only 51-percent of the expenses were business-related, allowed a deduction of $ 4,078. Respondent also allowed a deduction of $ 2,640 for commission expenses, $ 2,875 for rental expenses, and $ 1,299 for travel expenses. The remainder of the claimed deductions was disallowed, which disallowance is in dispute. Petitioners have conceded both the $ 3,450 adjustment for rental expense and that they have no records with which to substantiate any of the other disallowed deductions. Deductions are strictly a matter of legislative grace, and petitioners bear the burden of proving they are entitled to any deductions claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). If certain claimed deductions are not adequately substantiated, we may be permitted to estimate them when we are convinced from the record that the taxpayer has incurred such expenses and we have a basis upon which to make an estimate. Cohan v. Commissioner, 39 F.2d 540 (2d. Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). *453 Furthermore, section 6001 and the regulations promulgated thereunder require taxpayers to maintain adequate records to substantiate the claimed deductions and other matters required to be shown on their returns. Petitioners have conceded that they cannot substantiate any of the disallowed deductions relating to the claimed travel, meal, and gift expenses. In addition, petitioners have not provided any documentation or testimony with respect to the other claimed deductions. Because we have no reasonable evidentiary basis, we cannot exercise discretion and estimate any claimed deductions. See also section 274(d). Accordingly, we sustain respondent's determination with respect to the claimed Schedule C expenses. Confiscation losses
Petitioners seek to offset the disallowed Schedule C deductions by deducting an equivalent amount attributable to losses incurred due to the Iranian government's confiscation (expropriation) of assets. Generally, losses sustained during a taxable year that are not compensated for by insurance or otherwise are allowable as deductions. Sec. 165(a). In the case of individuals, however, deductions are limited to: (1) losses incurred in a trade *454 or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and (3) casualty and theft losses. Sec. 165(c)(3); Brown v. Commissioner, 85 T.C. 968, 998 (1985), affd. sub nom. Sochin v. Commissioner, 843 F.2d 351 (9th Cir. 1988). Furthermore, a loss is not amortizable, but is deductible only in the taxable year in which the loss is sustained. Sec. 1.165-1(d)(1), Income Tax Regs. However, unused losses may be carried forward or backward depending on the nature of the loss, subject to various statutory limitations. An individual's expropriation loss is deductible if the loss was incurred either in a trade or business or in a transaction entered into for profit. Elek v. Commissioner, 30 T.C. 731 (1958); Whyte v. Commissioner, T.C. Memo. 1986-486, affd. 852 F.2d 306 (7th Cir. 1988). Here, petitioners were not engaged in the trade or business of operating a construction company. Rather, they were the majority shareholders of Artat. Artat owned the business assets seized *455 by the Iranian government, and, thus, the losses sustained due to the seizure of Artat's assets are Artat's losses, not petitioners'. Moreover, it is not permissible to shift a legitimate corporate loss, deductible by the corporation, to a taxpayer who seeks a personal deduction, even though the taxpayer is an owner of the corporation. Leamy v. Commissioner, 85 T.C. 798, 810 (1985). Therefore, it is not necessary to determine either the character of the assets or Artat's basis in the seized assets. Petitioners' only possible loss deduction vis-a-vis Artat would be with regard to their investment in the stock of Artat. Section 165(g) provides that if any security which is a capital asset becomes worthless during the taxable year, the resulting loss shall be treated as a loss from the sale or exchange of a capital asset. Moreover, the amount of capital losses allowable in any year is limited to the extent of capital gains plus the lesser of (1) $ 3,000, or (2) the excess of such losses over such gains. Sec. 1211(b). However, an individual is entitled to carryover long-term capital losses to succeeding years. Sec. 1212(b)(1)(B). [3]
*456 Thus, in order to be able to deduct the claimed losses, petitioners must show: (1) That they incurred losses; (2) when the losses were incurred; (3) that at such time they were eligible to deduct such losses; [4] (4) the nature (capital v. noncapital; business v. personal assets) of the losses; and (5) if capital losses were incurred, the amounts of capital gains earned during the intervening years, for purposes of computing any allowable carryover. (Our discussion hereinafter pertains to the allowability of losses in the year incurred, with the understanding that any deduction in the year before the Court would be as a result of an allowable carryover.) *457 With regard to any loss realized as the result of the worthlessness of petitioners' stock in Artel, we hold that petitioners have failed to prove that their stock became worthless after July 30, 1979, the date they established residency in the United States. Due to Khomeini's rise to power in early 1979, Artat virtually eliminated its operations. During the first half on 1979, most of Artat's construction workers were laid off, and construction at the work sites virtually stopped. By the time Artat's work site was raided on July 6, 1979, work had completely stopped and the site was already closed. Petitioners never claimed, nor did they prove, that Artat continue to function after their escape from Iran. Indeed, after petitioners left Iran, no new equipment was purchased, all construction workers were fired, and that never resumed operations. Thus, before petitioners left Iran, Artat had already become worthless. There was no showing that there was any market value left in the shares of the corporation at that time. Under the circumstances, it seems highly unlikely that there could be any value in the possibility that Artat would be resurrected in the near future. Therefore, *458 we hold that Artat became defunct and its shares of stock worthless prior to July 30, 1979. Accordingly, petitioners may not deduct any loss relating to their Artat stock. Petitioners also seek to deduct as a casualty loss the destruction of their summer home by mobs in 1978. Petitioners' witness testified that the summer house was burned by mobs in late 1978. Since petitioners were nonresident aliens in 1978, and their summer house was located in Iran, petitioners are not entitled to a casualty loss under section 165(c)(3) for the destruction of their summer home. Sec. 873(b). In addition, petitioners contend that substantial personal assets, including bank accounts, were also confiscated by the Iranian government. The confiscation of personal, nonbusiness property does not give rise to theft or casualty losses under the provisions of section 165(c)(3). The confiscation of property by government officials who are acting under color of legal authority does not constitute theft for tax deduction purposes. Powers v. Commissioner, 36 T.C. 1191, 1192 (1961). Finally, in their brief, petitioners refer to the loss of 1000 sheep, 4 model homes, and *459 5 unsold residential units, plus losses in the form of cash expenditures to employees of Artat subsequent to 1979. Other than one brief reference to the model homes by one of petitioners' witnesses, there is no evidence as to the ownership, cost, or date of the alleged loss of any of the assets. Moreover, statements made by petitioners in their brief do not constitute evidence, nor is it permissible to have documentary material received into evidence merely by attaching such material to a brief. Additionally, it is well established that issues raised for the first time on brief will not be considered when to do so prevents the opposing party from presenting evidence that he might have if the issue had been timely raised. DiLeo v. Commissioner, 96 T.C. 858, 891 (1991), affd. 959 F.2d 16 (2d Cir. 1992). Therefore, we give no consideration to petitioners' newly raised issues. Additions to tax
Respondent determined additions to tax under section 6653(a)(1)(A) and (B). Under section 6653(a)(1)(A), an addition to tax equal to five percent of the underpayment is imposed if any part of the underpayment is due to negligence *460 or the intentional disregard of the rules and regulations. Under section 6653(a)(1)(B), an addition to tax is imposed in an amount equal to 50 percent of the interest on the portion of the underpayment attributable to negligence. Negligence is the lack of due care or failure to do what a reasonable and ordinary person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners also have the burden of proof on this issue. Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Since petitioners claimed deductions without having adequate documents with which to substantiate them, we find petitioners negligent in claiming these deductions. Accordingly, petitioners are liable for additions to tax for negligence. In addition, respondent also determined an addition to tax for a substantial understatement of tax under section 6661(a). This addition to tax is applicable if the amount of the understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return for the taxable year, or (2) $ 5,000. Sec. 6661(b)(1)(A). However, the amount of the understatement of tax *461 is reduced by the portion of the understatement which is attributable to any item where there exists substantial authority for the treatment of such item, or if the facts affecting such item are adequately disclosed in the return or in the statement attached to the return. Sec. 6661(b)(2)(B). Petitioners presented no argument concerning this addition to tax, and the record does not demonstrate that either reduction under section 6661(b)(2)(B) applies. Accordingly, the addition to tax under section 6661(a) will apply. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. For purposes of this case, we accept petitioners' contention that during the period involved in this case, 70 rials equaled $ 1.00. 72,000,000 rials thus equals $ 1,028,571.43.↩
3. A taxpayer's failure to claim capital losses in prior years does not result in the disallowance of deductions in subsequent years. Lang v. Commissioner, T.C. Memo. 1983-318. However, the amount of carryover loss is reduced in accordance with section 1212(b)(1)(B), regardless of whether a deduction was taken in a prior year. Petitioners also bear the burden of proving that they are entitled to the deductions claimed and that the losses have not been previously absorbed. Williams v. Commissioner, T.C. Memo. 1991-317, affd. without published opinion 996 F.2d 1230↩ (9th Cir. 1993). We note that the record does not contain copies of petitioners' 1985 and 1986 returns.
4. Petitioners may not deduct the losses involved herein if they were nonresident aliens at the time the losses were incurred. An alien is a United States resident for income tax purposes if he is not a mere transient or sojourner. An alien is presumed to be a nonresident alien. Sec. 1.871-4(b), Income Tax Regs. An alien whose stay is limited by immigration laws is not a resident, in the absence of exceptional circumstances. Sec. 1.871-2(b), Income Tax Regs.↩ For purposes of this case, but without a determination that this case involves "exceptional circumstances", we treat petitioners as having established residency in the United States as of their arrival on July 30, 1979.