T.C. Memo. 2017-81

UNITED STATES TAX COURT

XING F. WANG AND KATHLEEN P. LEE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1269-14.                    Filed May 15, 2017.

Xing F. Wang and Kathleen P. Lee, pro sese.

<u>Mary P. Hamilton</u>, <u>Carlton W. King</u>, and <u>Jeffrey R. Knight</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, <u>Judge</u>:  In a notice of deficiency respondent determined deficiencies

of $198,517 and $3,445 in petitioners' Federal income tax for 2009 and 2010,

[*2] respectively. Respondent additionally determined that petitioners were liable for a $39,703 section 6662(a)[1] accuracy-related penalty for 2009.[2]

After concessions, the issues remaining for decision relating to the deficiency are: (1) whether petitioners may deduct or must amortize certain business expenses beyond the deductions respondent allowed for 2009 and 2010; (2) whether petitioners are liable for self-employment tax on wages received from their sole proprietorship in 2010; (3) whether section 48D requires petitioners to reduce by one-half their allowable business expense deductions for 2009 and 2010; (4) whether section 48D subjects petitioners to a recapture tax, applicable for either their 2009 or 2010 tax year; (5) whether petitioners may use a capital loss carryover for 2009 and 2010; and (6) whether petitioners are liable for the section 6662(a) and (b)(2) accuracy-related penalty for either their 2009 or 2010 tax year.

---

[1]All section references are to the Internal Revenue Code (Code) in effect for the taxable years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[2]Respondent amended his answer to assert that petitioners are liable for an accuracy-related penalty for the 2010 tax year rather than 2009 as a result of petitioners' taxable year argument discussed infra III.D. of this report.

**[*3]**                              FINDINGS OF FACT

We incorporate the parties' stipulation of facts and related exhibits by this reference. At all times relevant, petitioners resided on Palm Street, Worcester, Massachusetts (Palm St. address).

Petitioner Xing F. Wang holds a Ph.D. in applied mechanical and bioengineering. Dr. Wang's career has led him to research positions at the Beijing Institute of Technology, China; Fukuoka University, Japan; University of Ruhr, Germany; and the University of Utah. His principal research has focused on developing a multiparameter method of screening for atherosclerosis-related coronary artery disease or stroke. In 2008 he received a patent for methodologies he innovated and developed in this field of research. In recognition of his contributions to the cardiovascular sciences, the American Heart Association named Dr. Wang a fellow of the organization.

In 2006 Dr. Wang registered the trade name 3W Consulting (3WC) with the State of Utah. He operated 3WC as a sole proprietorship, conducting and furthering his research under its name. He did not incorporate or organize 3WC by any other means, nor did he file with the Secretary a Form 1128, Application to Adopt, Change, or Retain a Tax Year.

**[*4]** Dr. Wang served as the founder, sole owner, and head researcher of 3WC. During 2009 and 2010 Dr. Wang operated 3WC from offices at the Palm St. address. In 2010 he assembled a research team to help with his work at 3WC. Among others, his research team included petitioner Kathleen P. Lee, an engineer, and their son, a Ph.D. candidate at Harvard University.

In 2010 the Patient Protection and Affordable Care Act (ACA), Pub. L. No. 111-148, 124 Stat. 119 (2010), became law. ACA sec. 9023(a), 114 Stat. at 877, added section 48D to the Code and included an incentive program for small businesses engaged in qualifying therapeutic discovery projects (QTDP). Section 48D invited eligible businesses to apply for benefits under the QTDP program. These benefits were meant to partially subsidize an applicant's "qualified investment" expenses. The program subsidized only those qualified investment expenses incurred during the applicant's tax years 2009 and 2010. Qualifying participants could elect to receive benefits as tax credits or as cash payments.

On April 14, 2010, Dr. Wang--using the 3WC name--applied to participate in the program. Dr. Wang filed a Form 8942, Application for Certification of Qualified Investments Eligible for Credits and Grants Under the Qualifying Therapeutic Discovery Project Program, seeking program benefits for his

[*5] development of a Multiparameter Screening Method and Multicomponent Drug for Cardiovascular Disease.

Dr. Wang represented in his application that 3WC had incurred qualifying investment expenses of $480,500 in 2009, and he projected an additional $506,000 of qualifying investment expenses for 2010. Dr. Wang requested a cash payment, in lieu of tax credits, if his project qualified for participation in the QTDP program.

On October 29, 2010, respondent accepted 3WC's application and approved a "grant" of $244,479. Respondent notified Dr. Wang of his application's approval, the amount of his program benefit, and one of the program's key requirements: that program participants amend their 2009 tax returns, reducing their claimed business expense deductions reimbursed via the grant, and report similarly when filing their 2010 tax returns. Additionally, respondent's notice warned petitioners that if "the project ceases to be a * * * [QTDP], or your expenditures are less than you originally reported on Form 8942, recapture of some or all of the grant may be required."

The grant was distributed to petitioners in two portions. Respondent released $240,250 to petitioners in December 2010, attributable to their 2009

[*6] QTDP expenses. An additional $4,229 was released to petitioners in December 2011 for their estimated 2010 expenses.

For the years at issue, Dr. Wang and Ms. Lee jointly prepared and filed their own tax returns, which included Schedules C, Profit or Loss From Business (Sole Proprietorship), for 3WC. For both 2009 and 2010 petitioners reported that 3WC failed to generate gross income while incurring business expenses of $21,829 and $307,442, respectively.

Of those 2010 expenses, $140,625 represented wages paid to petitioners. Petitioners reported their 3WC wages as income but did not report or pay self-employment tax thereon. Petitioners did not file a Form 941, Employer's Quarterly Federal Tax Return, under the 3WC name or under their names for any periods in the years at issue. Petitioners did not withhold Federal income tax from any wages paid to members of the 3WC research team or their contractors.

On November 5, 2013, respondent issued petitioners a notice of deficiency (notice) for tax years 2009 and 2010. In the notice respondent disallowed petitioners' deductions for various Schedule C expenses and a personal capital loss carryover, and subjected certain income to self-employment tax.[3] Respondent

---

[3]The notice also contains correlative adjustments to petitioners' Making Work Pay credit and self-employment tax. These are computational adjustments
(continued...)

**[\*7]** also reduced petitioners' allowable Schedule C deductions to comply with the statutory terms of the QTDP program. Additionally, respondent determined petitioners were liable for the QTDP program recapture tax of $195,636 in 2009 and the section 6662(a) and (b)(2) substantial understatement of income tax penalty for 2009.

Petitioners timely filed their petition seeking redetermination. On February 2, 2016, respondent filed a motion to amend his answer, and on March 22, 2016, we granted respondent's motion. Respondent's amended answer asserts, as an alternative to his position in the notice, that petitioners are liable for the QTDP program recapture tax for the 2010 tax year instead of 2009, and that if petitioners are liable for the QTDP program recapture tax for the 2010 tax year then the accuracy-related penalty under section 6662(a) based on a substantial understatement should apply for 2010 instead of 2009.

---

[3](...continued)
which will be resolved by the outcome of the issues to be decided, and we do not separately address them. These issues are to be resolved in the parties' Rule 155 computations consistent with the Court's opinion.

**[\*8]**                                        OPINION

I.      <u>Burden of Proof</u>

Generally, the Commissioner's determinations are presumed correct, and taxpayers bear the burden of proving otherwise. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and taxpayers bear the burden of proving they are entitled to deductions claimed. <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934). Taxpayers are required to maintain sufficient records to establish the amounts of their income and deductions. Sec. 6001; <u>Higbee v. Commissioner</u>, 116 T.C. 438, 440 (2001); sec. 1.6001-1(a), Income Tax Regs. The failure to keep and present such records weighs heavily against the taxpayer. <u>Rogers v. Commissioner</u>, T.C. Memo. 2014-141, at \*17. In certain circumstances the burden of proof shifts to the Commissioner if the taxpayer introduces credible evidence with respect to a relevant factual issue. Sec. 7491(a)(1).

Because we decide the QTDP program recapture tax issue on the preponderance of the evidence, the burden of proof is irrelevant. <u>See, e.g.</u>, <u>Estate of Turner v. Commissioner</u>, 138 T.C. 306, 309 (2012). Petitioners do not contend, and the record does not establish, that they are entitled to a shift in the burden of

[*9] proof with regard to any of the other issues decided herein.  Therefore, the burden of proof remains petitioners'.

II.     Schedule C and Self-Employment Adjustments

Respondent disallowed deductions for (1) $5,976 and $5,883 of home office expenses for 2009 and 2010, respectively; (2) the $39,205 purchase of a car for 2010; (3) $64,520 in other depreciation for 2010, and additionally (4) determined that $140,625 of wages paid to petitioners for 2010, through 3WC, was income subject to self-employment tax.

A.     Disallowed Home Office Expense Deductions

Taxpayers are generally permitted to deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  Sec. 162; Commissioner v. Lincoln Sav. & Loan Ass'n, 403 U.S. 345, 352-353 (1971); Lychuk v. Commissioner, 116 T.C. 374, 386 (2001).  Taxpayers may not, however, deduct personal, living, or family expenses.  Sec. 262.

Section 280A strictly limits a taxpayer's deduction for business expenses arising from the use of a home office.  A taxpayer may deduct home office expenses only when the taxpayer uses the home office exclusively as his or her regular principal place of business.  Sec. 280A(c)(1)(A).  Taxpayers with qualifying home office expenses may take a deduction only to the extent the

[*10] taxpayer's gross income derived from use of the home office exceeds that qualifying expense.  Sec. 280A(c)(5)(A); Tobin v. Commissioner, T.C. Memo. 1999-328.  In other words, a taxpayer may not claim a home office expense deduction that would give rise to or increase a net loss from the business to which the deduction relates.  See Visin v. Commissioner, T.C. Memo. 2003-246, aff'd, 122 F. App'x 363 (9th Cir. 2005).

Petitioners deducted office expenses of $9,802 for 2009 and $9,430 for 2010.  Respondent determined that petitioners operated 3WC from their residence at the Palm St. address.[4]  Accordingly, respondent recharacterized $5,976 and $5,883 of petitioners' office expenses as home office expenses for 2009 and 2010, respectively.  Because petitioners' Schedule C reported that 3WC generated no gross income for 2009 or 2010, respondent disallowed the deductions for these home office expenses.

Petitioners argue that respondent erred in reclassifying and disallowing these amounts.  Petitioners argue that they incurred these office expenses because they provided their research team with a necessary working space and study area by renting three rooms on the third floor at the Palm St. address.  Petitioners allege

---

[4]In their petition, petitioners admit that 3WC operated from the Palm St. address for tax years 2009 through 2011.

[*11] these expenses were unrelated to their individual residence and should therefore be deductible.

Petitioners, however, failed to present any credible evidence, documentary or otherwise, to corroborate this claim. They did not offer or produce a separate lease for this office and research space or testify with respect to this issue at trial. Petitioners failed to satisfy their burden. The recharacterization of their office expenses as home office expenses is sustained.

As a result, petitioners' home office expense deductions for 2009 and 2010 are subject to the section 280A(c)(5) limitation. Petitioners reported on their Schedules C that 3WC earned no gross income for the years at issue. Accordingly, petitioners may not deduct these home office expenses for those years.

B.     2010 Car Purchase Expense

Section 263(a) provides that no current deduction shall be allowed with respect to capital expenditures. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.263(a)-2, Income Tax Regs. Capital expenditures are those that (1) create or improve a separate and distinct asset, (2) produce a significant future benefit, or (3) are incurred in connection with the acquisition of a capital asset. Lychuk v. Commissioner, 116 T.C. at 385-386. Capital expenditures, unlike ordinary and necessary business expenses, must be recovered over time.

[*12] Sec. 167. An automobile is a distinct capital asset, and generally its purchase price may not be deducted, but rather must be amortized over the useful life of the vehicle. Sec. 1.263(a)-2, Income Tax Regs.

On their 2010 tax return, petitioners claimed a $41,383 business expense deduction for supplies. Respondent determined that $39,205 of this expense represented the purchase of a new car and disallowed any deduction for this amount.[5] Petitioners contest this adjustment, arguing they should be permitted to deduct the car purchase price as a qualified investment expense under section 48D.

Under section 263(a), we hold petitioners were not permitted to deduct the car expense for 2010. The cost basis of the vehicle must be apportioned over the vehicle's useful life.[6]

---

[5]Petitioners' worksheet Form 4562, Depreciation and Amortization, did not indicate an election to expense the vehicle under sec. 179. See sec. 1.179-5, Income Tax Regs. Had petitioners made this election, however, they would still be unable to deduct the vehicle cost, as 3WC generated no gross income for tax year 2010. See sec. 179(b)(3).

[6]The notice of deficiency also disallowed petitioners' attempt to deduct depreciation on this vehicle for failure to establish their basis. However, the notice of deficiency did not dispute petitioners' claim that the vehicle was used for business purposes, and respondent did not attempt to litigate such an issue. The record before us establishes petitioners have a $39,209 cost basis in the vehicle. Accordingly, a depreciation deduction for the vehicle is allowed for 2010, along with any applicable bonus depreciation.

**[*13]** C.     Schedule C Depreciation Deductions

      1.     2010 Patent Depreciation

Petitioners attempted to amortize--depreciate--unidentified patents placed into service in January 2010.  Respondent disallowed this deduction because petitioners could not establish the tax bases in the patents.

Taxpayers may be entitled to recover their tax bases in patents through deductions for amortization or depreciation.  Sec. 1.167(a)-3, Income Tax Regs. Basis is the capital cost a taxpayer incurs when buying or creating a piece of property.  See secs. 1011 and 1012.  When the Commissioner determines that a taxpayer has failed to establish the cost of depreciable property, the taxpayer bears the burden of establishing the tax basis in order to depreciate the property.  See Cluck v. Commissioner, 105 T.C. 324, 337 (1995); Reinberg v. Commissioner, 90 T.C. 116, 139 (1988).

The tax basis often reflects the costs paid to purchase property, but for self-created patents, tax basis consists of those costs properly capitalized by the taxpayer during the patent's development.  See secs. 167(c), 1011, 1012; sec. 1.263(a)-4(b)(ii), (d), Income Tax Regs.  Self-created patents, however, often have minimal tax bases as section 174 permits taxpayers to immediately deduct their annual research and development expenses rather than capitalize those costs into

**[\*14]** the patent's tax basis. See secs. 263(a)(1)(b), 263A(c)(2), 174; sec. 1.174-2, Income Tax Regs.

At trial petitioners argued for basis amounts reflecting their patents' potential fair market values. In support of this proposition, petitioners entered into evidence an unexecuted agreement which recites that Dr. Wang grants an exclusive license for the use of one of his patents to a third party. Even if this agreement represents an accurate appraisal of this individual patent's fair market value, it is not helpful for purposes of establishing petitioners' tax basis.

The record is devoid of any reliable probative evidence documenting petitioners' bases in these patents. Petitioners failed to introduce any documents or an accounting of any expenses paid and properly capitalized during the development of or in purchasing these patents. Petitioners offered only the proposed license agreement and a misunderstanding of law. Therefore, petitioners may not depreciate--amortize--the patents at issue.

### 2. Depreciation of Computer

A deduction is allowed for depreciation of property used in a trade or business or held for the production of income. Sec. 167(a). The purpose of the deduction for depreciation is to allow the taxpayer to recover over the useful life of the property its cost or other basis. Unites States v. Ludey, 274 U.S. 295,

[*15] 300-301 (1927).  The taxpayer bears the burden of establishing the cost or other basis of depreciable property.  Cluck v. Commissioner, 105 T.C. at 337.

Petitioners claimed a computer depreciation expense deduction of $130 for 2010.  Respondent disallowed the deduction because petitioners failed to establish their basis in the computer.  In their petition, petitioners alleged this disallowance was in error, claiming a $636 basis in the computer.

At trial petitioners failed to offer any evidence on this issue and thus fell short of carrying their burden to establish their cost basis in the computer.  Accordingly, petitioners' depreciation deduction is disallowed.  See Alami v. Commissioner, T.C. Memo. 2009-42.

D.    Self-Employment Taxes

Section 1401 imposes a tax on the "self-employment income" of every individual.  Self-employment income is defined as the net earnings--gross income less allowable deductions--from self-employment, or carrying on a trade or business as an individual, as a sole proprietor.  Sec. 1402(a); Eades v. Commissioner, 79 T.C. 985, 986 (1982).

In 2010 petitioners drew checks from 3WC totaling $140,625.  Accordingly, 3WC issued petitioners and respondent the appropriate information returns reporting these payments as "other income".  Petitioners reported these payments

[*16] as income on their 2010 return. Petitioners, however, did not report or pay any self-employment tax on this income.

Respondent determined that these payments were subject to self-employment tax. Petitioners allege this determination was in error. Petitioners argue the QTDP grant was not taxable for Federal income tax purposes. Petitioners' argument appears to rely on a misreading of section 48D(f)(3), which excludes from the income of QTDP participants the amount of the "grant" distributed through the program.

While petitioners' QTDP grant is excluded from their taxable income, this exclusion does not extend to payments to creditors, contractors, or any other individual or entity 3WC paid with funds from the QTDP grant. The record shows that petitioners worked for 3WC--in various capacities--to collectively advance Dr. Wang's research. In return 3WC compensated petitioners for their time and efforts.[7] On this record, we find that Dr. Wang and Ms. Lee were engaged in the

---

[7]Respondent entered into the record Form 2866, Certified Transcripts, indicating 3WC/Dr. Wang did not file Forms 941, Employer's Quarterly Federal Tax Return, for the years at issue. Respondent also entered into the record copies of Forms 1099-MISC, Miscellaneous Income, issued to all payees of 3WC for "other income" or "royalties". On the basis of the record, it is clear that petitioners/3WC treated all members of its research team as independent contractors. Respondent has not contested this characterization, and we find no occasion to do so here.

[*17] trade or business of medical research as a sole proprietor and an independent contractor, respectively.

Petitioners did not raise the issue of self-employment tax at trial, nor did they present evidence to rebut respondent's determination. Petitioners cite no legal authority supporting their argument.[8] Petitioners did not advance any other argument with respect to any possible noncompensatory character of these payments. The statutory sections governing the QTDP program lack any provision granting such an exemption, or suggesting the validity of petitioners' position. Petitioners' contention is without merit, and respondent's determination is sustained.

III.  QTDP Reduction and Recapture

A.  Statutory Background

ACA sec. 9023(a) established a program providing subsidies to small businesses engaged in QTDPs. The ACA added section 48D to the Code. Id. Section 48D provided taxpayers engaged in QTDPs with an opportunity to seek reimbursement for their projects' "qualified investment" expenditures. Sec. 48D(a). Section 48D defined "qualified investment" expenses broadly as "any

---

[8]Petitioners' son advanced an identical argument before this Court which was summarily rejected in Wang v. Commissioner, T.C. Summary Opinion 2014-39.

**[\*18]** expenses necessary for and directly related to the conduct of" the QTDP. Sec. 48D(b)(1). However, the statute explicitly disqualified certain expenses, notably money paid to CEOs, or to individuals acting in such a capacity. Sec. 48D(b)(3)(D).

The program was administered jointly by the Department of the Treasury (Treasury) and the Department of Health and Human Services (DHHS). Sec. 48D(d). When DHHS determined an applicant was qualified, Treasury would deliver to the qualified taxpayer the amounts approved as reimbursement for the project's qualified investment expenses. This reimbursement generally came in the form of nonrefundable tax credits. However, as an alternative to the nonrefundable tax credits, ACA sec. 9023(e) also authorized Treasury to distribute cash--nominally a "grant"--to qualifying taxpayers electing to receive such. See also sec. 48D(f).

Whether the qualifying taxpayer opted for tax credits or a cash grant, the amount awarded was capped at half of the taxpayer's qualified investment expenses. Sec. 48D(a); ACA sec. 9023(e)(4), 124 Stat. at 882. The program benefits related only to expenditures made during the applicant's 2009 and 2010 tax years. Sec. 48D(b)(5); ACA sec. 9023(e)(1), 124 Stat. at 881.

**[\*19]**  The program prohibited participating taxpayers from deducting otherwise allowable qualified investment expenses to the extent those expenses were reimbursed through the program.  Secs. 48D(e)(2), 280C[i](g).  Taxpayers receiving awards of cash or tax credits were required to file their current, and amend their past, tax returns accordingly.  See Notice 2010-45, secs. 9.03, 9.09, 2010-23 I.R.B. 734, 739.

Applicants for program benefits were required to state their actual qualified investment expenditures for 2009 and provide projections of qualified investment spending for 2010.  Program participants were required to certify the accuracy of their 2009 expenses and 2010 projections by signing their application under penalty of perjury.  These actual and anticipated expenditures informed the scope of the program benefits awarded to qualifying applicants.  When program participants failed to spend accordingly, or misrepresented the amount or nature of their qualified expenses, the program's terms authorized the Commissioner to recapture amounts unspent, or not meeting the limited scope of "qualified."  See ACA sec. 9023(e)(5), 124 Stat. at 882.

In administering the program, the Commissioner issued Notice 2010-45, 2010-23 I.R.B. 734, to inform interested taxpayers of the procedures governing application for, and receipt of, QTDP benefits.

[*20] B.     Deduction Reduction Avoiding Double Benefit

Respondent determined that petitioners failed to amend their 2009 return and reduce their Schedule C expenses as required by section 48D(e)(2). Respondent also determined that they failed to reduce otherwise allowable Schedule C expenses on their 2010 return. Accordingly, respondent reduced by half each line item of petitioners' 2009 and 2010 Schedule C expenses.[9] Petitioners allege that respondent erred in reducing their Schedule C expenses. We disagree.

The award letter that petitioners received explicitly advised them of their statutory obligations. It directed them to reduce the expenses reported on their 2010 tax return by the amount awarded. It directed them to, similarly, file an amended return for 2009. Petitioners neglected to discharge this duty. Petitioners' 2009 and 2010 allowable Schedule C expenses otherwise reimbursed by the QTDP grant must be reduced by half. See Odujinrin v. Commissioner, T.C. Memo. 2014-213, at *19.

---

[9]For 2009 this resulted in a reduction by half of petitioners' permitted Schedule C deductions for: taxes and licenses ($92), supplies ($210), repairs and maintenance ($360), office expense ($1,913), car and truck expense ($1,505), and other expenses ($3,846). For 2010: taxes and licenses ($92), supplies ($1,089), repairs and maintenance ($327), office expense ($1,773), car and truck expense ($2,300), other expenses ($2,673), and wages ($32,662).

[*21]  C.    <u>Recapture of Unused or Unqualified Amounts</u>

The QTDP program's terms require the Commissioner to recapture from taxpayers excess program benefits.  Sec. 48D(f)(2); ACA sec. 9023(e)(5).  Specifically, when the taxpayer elects to receive a cash distribution--the nominal grant--the ACA directs the Commissioner to recapture in a manner similar to the established business investment credit recapture regime of section 50.  ACA sec. 9023(e)(5)(A), (B)(ii).

Section 50 subjects taxpayers to an increase in tax liability representing the recapture of previously granted investment tax credits.  Sec. 50(a)(1)(A).  The recapture tax is imposed when a taxpayer is found to be ineligible for the tax credit.  Sec. 50(a)(1) and (2).  When a QTDP program participant receives a cash grant in excess of actual qualified expenses, the excess is treated as a disqualified expenditure giving rise to recapture tax.  ACA sec. 9023(e)(5)(B)(i).  As applicable here, the ACA modifies the section 50 rules and directs the Commissioner to recapture an excess grant as though the excess amount ceased to be a qualified investment expense immediately after such a grant was made.  ACA sec. 9023(e)(5)(B)(i).  The recapture tax is effected by an increase to the QTDP participant's tax, in an amount sufficient to fully recover the excess award, in the year the grant was made.  Id.; see Silver Med., Inc. v. Commissioner, 147

[*22] T.C. __, __ (slip op. at 11-15) (Dec. 19, 2016) (grant is made in year funds are disbursed).

On June 7, 2010, Treasury published Notice 2010-45, supra, informing QTDP participants of the application of section 50 recapture rules. Notice 2010-45, secs. 2.05, 8.03(4), 8.03(5). The award letter sent to participants explicitly informs them that if "your expenditures are less than you originally reported on Form 8942, recapture of some or all of the grant may be required." The letter directs participants to report any applicable recapture using Form 4255, Recapture of Investment Credit.

The cash dispersals under the QTDP program are not grants in the general academic sense. The QTDP program was a tax expenditure program operating like a refundable business tax credit. Recipients of QTDP program benefits were required to spend in accord with the representations they made to the Government in their application for benefits. If the taxpayer failed to spend that amount on qualified investments, the Government reserved the right to recoup the excess benefits it had erroneously granted.

In their QTDP application, petitioners reported that 3WC had incurred, or would incur, a total $986,500 of qualified investment expenses. As a result of these representations, petitioners were approved for QTDP program benefits of

[*23] $244,479. This amount represented half of their 2009, and a portion of their projected 2010, qualified investment expenses.

Petitioners did not report any recapture tax liability.

Although respondent determined in the notice that petitioners were liable for a QTDP recapture tax for 2009, respondent now contends that petitioners are liable for the recapture tax for the 2010 taxable year as a result of our holding in Silver Med., Inc. v. Commissioner, 147 T.C. at __ (slip op. at 11-15), where we held that a taxpayer was liable for the recapture tax in the taxable year the grant funds were disbursed. Petitioners received the grant funds in 2010, and therefore, if petitioners are liable for the recapture tax, they are liable for the 2010 tax year.[10]

Respondent accepted as petitioners' qualified investment expenditures the allowable business expense deductions they claimed on their tax returns for the years at issue, with the exception of a payment to Dr. Wang.[11] These deductions,

_____

[10]Respondent amended his answer to assert that petitioners are liable for the recapture tax for the 2010 tax year instead of 2009 because of petitioners' taxable year argument discussed infra. We find that petitioners are liable for the recapture tax in 2010 as a result of our holding in Silver Med., Inc. v. Commissioner, 147 T.C. __, __ (slip op. at 11-15) (Dec. 19, 2016), and not because of petitioners' argument. The notice of deficiency includes both the 2009 and 2010 tax years and therefore under sec. 6214(a) we have jurisdiction to redetermine the correct amount of the deficiency for the years at issue.

[11]Respondent determined that a $116,000 payment from 3WC to Dr. Wang,
(continued...)

**[\*24]** however, accounted for only $97,687 of qualified investment expenditures. As the program sought to reimburse participants for only half of their qualified investment expenditures, this meant petitioners were eligible for a QTDP award of only $48,843. Because petitioners received a QTDP award of $244,479, we hold that petitioners are liable for a $195,636 recapture tax for their 2010 tax year, the excess of their award amount over the amount for which they actually qualified.

Petitioners' only argument contrary to our holding is with respect to their understanding of their applicable taxable year, which we address below.

### D. Petitioners' Taxable Year Argument

Petitioners allege 3WC's 2009 tax year began on December 1, 2008; its 2010 tax year, on December 1, 2009.[12] Petitioners allege 3WC used a fiscal year,

---

[11](...continued)
made in 2010, did not constitute a qualified investment expense. Sec. 48D(b)(3)(A) (incorporating by reference sec. 162(m)(3)) specifically excludes from the definition of "qualified investment" any remuneration paid to chief executives, or any person acting in such a capacity. Petitioners contested this determination only at trial. While we have no doubt Dr. Wang was intimately involved in the conduct of research, the facts also indicate Dr. Wang acted in the capacity of and presented himself as the president of 3WC. We find Dr. Wang--- operating 3WC as an extension of himself--served as the chief and only executive of 3WC. Respondent's determination to disallow the $116,000 as a QTDP qualified investment expenditure is correct.

[12]Petitioners' alleged taxable year does not correspond with the information they reported on Form 8942. On that form petitioners represented that the 2009

(continued...)

**[\*25]** requiring an alternative evaluation of their qualified investment expenses. This argument underpins nearly their entire petition. Petitioners failed to provide any supporting legal authority or precedent for this argument. Regardless, we respond to it briefly.

Petitioners' alleged taxable year does not comport with the law governing taxable years for sole proprietorships. The income and deductions of a sole proprietorship are reported on the return of the individual taxpayer. For this reason, a sole proprietorship uses the same tax year as its individual taxpayer-owner. See Gill v. United States, 258 F.2d 553 (5th Cir. 1958) (a sole proprietorship adopts the taxable year of its owner); Rev. Rul. 57-389, 1957-2 C.B. 298.

Generally, natural persons must use the calendar year as their taxable year unless they meet certain criteria. See sec. 441(g). Taxpayers meeting those requirements may change their taxable year only with the approval and permission of the Secretary. Sec. 1.442-1, Income Tax Regs.; see also sec. 446(b) (methods of tax accounting must consistently and clearly reflect income); Theriot v.

---

[12](...continued)
and 2010 tax years for 3WC ended November 30, 2010 and 2011, respectively. This would suggest petitioners' tax years for the years at issue began on December 1, 2009 and 2010, respectively.

**[*26]** <u>Commissioner</u>, 15 T.C. 912 (1950) (taxpayers must seek permission to change their taxable year). Qualifying taxpayers may request permission to make this change by filing Form 1128, Application to Adopt, Change, or Retain a Tax Year.

Petitioners did not incorporate 3WC, nor organize it in any other manner; 3WC was merely a trade name for Dr. Wang's research. Petitioners ran 3WC as a sole proprietorship and filed tax returns accordingly. Petitioners did not present any evidence that they individually, or as agents of 3WC, sought respondent's permission to adopt any particular fiscal year. Petitioners did not present any evidence they were eligible for exclusion from the calendar year default rule.

We do not doubt petitioners' intention to conduct 3WC's business on some form of fiscal year. However, sole proprietors and individuals do not adopt a taxable year merely by conducting business in such a manner or by filing returns supposedly indicative of something other than a calendar year. If a sole proprietor desires to use a taxable year different from the calendar year, he or she must file Form 1128 and abide by the regulations. Sec. 1.422-1, Income Tax Regs.

Accordingly we conclude that petitioners' argument with respect to their taxable year, and their associated allegations of error with respect to respondent's determinations, are irrelevant and without merit.

**[*27]** IV.    Capital Gains Issues

Section 1211 provides that noncorporate taxpayers may deduct capital losses to the extent of capital gains plus $3,000.  When capital losses exceed capital gains by more than $3,000, the excess may be carried forward to later taxable years.  Sec. 1212(b).  If a capital loss is to be carried forward from one year to another, the taxpayer must keep records substantiating (1) that the taxpayer incurred a loss, (2) that the taxpayer is entitled to deduct the loss, (3) the character of the loss, and (4) the amounts of any capital gain offset during any subsequent years.  Sec. 1.6001-1(e), Income Tax Regs.; see Widemon v. Commissioner, T.C. Memo. 2004-162, 2004 Tax Ct. Memo LEXIS 168, at *15; Meissner v. Commissioner, T.C. Memo. 1995-191, 1995 Tax Ct. Memo LEXIS 192, at *8; Aazami v. Commissioner, T.C. Memo. 1993-436, 1993 Tax Ct. Memo LEXIS 447, at *10.

Respondent determined petitioners failed to report short-term capital gain income of $4,658 for tax year 2009.  Petitioners concede they did not report their short-term capital gain income for 2009.

Additionally, for both years at issue respondent disallowed petitioners' use of a carried-over capital loss to offset their ordinary income.  Petitioners allege, however, that respondent erred by disallowing their $94,214 long-term capital loss

[*28] carryover deduction. In an attempt to substantiate their position, petitioners entered into evidence a Schedule D, Capital Gains and Losses, attached to a pair of brokerage statements, all for tax year 2000. Petitioners contend that these documents substantiate their capital loss carryover deduction. The Schedule D and attachments purport to show that petitioners incurred a short-term capital loss of $34,923 during 2000. They additionally purport to show that petitioners carried forward an earlier $55,354 short-term capital loss.

These documents by themselves are inadequate to establish petitioners' claim to a long-term capital loss carryover deduction.[13] These documents fail to explain the origin or circumstances of the previously existing $55,354 short-term capital loss carryover as applied on their year 2000 Schedule D.[14] These documents do not indicate whether there were other gains or losses during the intervening years.[15] Additionally, the documents fail to explain how these carryforward losses changed character--short-term to long-term--in the intervening

---

[13]The amounts on the Schedule D and its attachments fail to correspond with each other, raising questions of reliability.

[14]An entry on a tax return does not establish the existence of a loss. Halle v. Commissioner, 7 T.C. 245, 250 (1946), aff'd, 175 F.2d 500 (2d Cir. 1949).

[15]We note that petitioners' capital loss carryover increased by approximately $4,000 between the purported tax year 2000 Schedule D and their 2009 tax return.

[*29] years.  Petitioners did not testify regarding, or explain the origins of, these losses.  Petitioners did not offer any further records or documentation accounting for their capital gains or losses in the years between the original carryover loss and its asserted application.

Petitioners failed to substantiate their claimed $94,214 long-term capital loss carryover deduction.  Therefore, we sustain respondent's determination.

## V.    Section 6662 Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty on any portion of an underpayment of Federal income tax attributable to a taxpayer's negligence, disregard of rules or regulations, or substantial understatement of income tax.  Under section 7491(c), the Commissioner bears the burden of production with regard to the liability of individuals for penalties, and must present sufficient evidence indicating that it is appropriate to impose such penalties.  Higbee v. Commissioner, 116 T.C. at 446-447.

Respondent initially determined that petitioners are liable for the penalty under section 6662(a) and (b)(2) because they substantially understated their income tax for the 2009 tax year as a result of failing to report their liability for a QTDP recapture amount.  As a result of our holding that petitioners are liable for the QTDP recapture tax for 2010, however, we now consider whether petitioners

[*30] are liable for the penalty for their 2010 tax year rather than 2009. A substantial understatement is an understatement exceeding the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). In the light of our holdings above, a determination of the exact amount of petitioners' understatement requires Rule 155 computations, which we order below. To the extent the computations establish that petitioners substantially understated their income tax for 2010, respondent satisfies his burden of production. See sec. 7491(c); Prince v. Commissioner, T.C. Memo. 2003-247.

When the Commissioner meets his burden of production, the taxpayer bears the burden of proving by persuasive evidence that the penalty is inappropriate--for example, by showing that he or she acted with reasonable cause and in good faith. Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 448. The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, by taking account of all pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess the proper tax liability. Id.

Petitioners offered no persuasive argument or evidence to show that there was reasonable cause for the disallowed deductions or their failure to recapture or amend and file in accordance with the terms of the QTDP program they

[*31] voluntarily joined. Petitioners' challenge to the determined penalty seems to hinge entirely on their belief that 3WC operated on a noncalendar taxable year, immunizing them from respondent's determinations.

When cross-examined at trial, Dr. Wang argued that petitioners had hired a return preparer in determining their tax liabilities for the years at issue. Dr. Wang did not name and did not call as a witness this return preparer. We do not find Dr. Wang's testimony credible with respect to this matter. This testimony does not establish a defense of reliance on professional advice and is contradicted by the multiple documents in the record indicating petitioners prepared all their own materials filed with the IRS.

Petitioners failed to satisfy their burden of establishing reasonable cause for any portion of their underpayment for the 2010 tax year. We hold petitioners are liable for the section 6662(a) penalty insofar as the Rule 155 computations show a substantial understatement of income tax for the 2010 tax year.

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

**[\*32]**  To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.